ROSS v JAYBIRD AUTOMATION, INC

Docket No. 95712. Submitted June 7, 1988, at Detroit. Decided November 7, 1988.

Ronnie Lee Ross received a severe electrical shock, resulting in blindness in one eye, while operating an industrial machine manufactured by Jaybird Automation, Inc., and sold by Handling Systems Corporation to Ross' employer, Prestige Stamping, Inc. Along with Pamela Ross, he brought an action in Wayne Circuit Court against Jaybird Automation and Handling Systems, claiming negligence and breach of warranty in the manufacture and sale of the machine based on defendants' failure to instruct or warn Prestige Stamping regarding the proper installation and electrical connection of the machine. The trial court, Marianne O. Battani, J., granted summary disposition in favor of defendants, finding that defendants owed no such duty to warn or instruct. Plaintiffs appealed.

The Court of Appeals *held:*

A seller or manufacturer is generally liable in negligence for failure to warn purchasers or users of its product about dangers associated with intended uses and foreseeable uses. However, where, as here, a machine has no actual defects, was designed for one specific industry and sold only to professionals in that industry, the manufacturer or seller may presume that the buyer has mastery of the basic installation of the machine. Thus, such manufacturer or seller owes no actionable duty to warn or instruct regarding proper installation.

Affirmed.

PRODUCTS LIABILITY — NEGLIGENCE — STANDARD OF CARE.

A seller or manufacturer is generally liable in negligence for failure to warn purchasers or users of its product about dangers associated with intended uses and foreseeable misuses; this standard of care includes dissemination of adequate, accurate, and effective information in the form of warnings or instructions as are appropriate for the safe use of the product; how-

REFERENCES

Am Jur 2d, Products Liability §§ 284, 302.

See the Index to Annotations under Products Liability.

ever, where a machine has no actual defects, was designed for one specific industry and sold only to professionals in that industry, the manufacturer or seller may presume that the buyer has mastery of the basic installation of the machine and over such basic procedures as connection to an electrical source; such manufacturer or seller owes no actionable duty to warn or instruct regarding the proper installation of the machine.

*Sachs, Nunn, Kates, Kadushin, O'Hare, Helveston & Waldman, P.C.* (by *George T. Fishback*), for plaintiffs.

*Sullivan, Ward, Bone, Tyler, Fiott & Asher* (by *Michael J. Walter* and *A. Stuart Tompkins*), for Jaybird Automation, Inc.

*Puleo, Noeske & Tarnavsky* (by *Paul Abbo*), for Handling Systems Corporation.

Before: KELLY, P.J., and GRIBBS and C. W. SIMON,* JJ.

KELLY, P.J. Plaintiffs appeal as of right from a circuit court order granting summary disposition in favor of defendants. Plaintiffs originally brought a product liability action against defendants for their failure to warn or instruct plaintiff Ronnie Lee Ross's employer regarding the installation of a coil cradle machine. The trial court found that defendants owed no duty to warn or instruct, and granted summary disposition for defendants. We affirm.

On September 27, 1983, plaintiff Ronnie Lee Ross was working at Prestige Stamping, Inc. Ross was injured while operating a production system consisting of a stamping press and a coil cradle machine. A coil cradle is an automated industrial machine which feeds metal from a coil into a

---

* Circuit judge, sitting on the Court of Appeals by assignment.

stamping press. This particular coil cradle had been used at Prestige Stamping since 1972. Defendant Jaybird Automation, Inc., manufactured this coil cradle. Defendant Handling Systems Corporation sold the coil cradle to Prestige. Defendants sell coil cradles only to the metal stamping industry, and do not sell them to the general public. Handling Systems had sold a total of fourteen coil cradles to Prestige Stamping.

The coil cradle was not equipped with an electrical cord, nor did defendants sell a cord with it. Instead, the coil cradle was equipped with an electrical junction box to which the user would supply electricity in the manner best suited to the particular plant layout. Defendants did not include any instructions or warnings for wiring the coil cradles to an electrical source. The common practice in the industry for wiring these machines was to attach them to an overhead encased conductor which dropped the cord directly onto the machine.

Instead of wiring their coil cradle machine from above, Prestige's coil cradle was wired to a 220-volt outlet on the wall, with the wire running along the floor next to the coil cradle. There was no protective conduit around this cord. The electrical cord which connected the coil cradle with the 220-volt outlet had a cut in it, which apparently came in contact with a piece of scrap steel in Ross' work area. Ross attempted to pick up the scrap, and received a severe electrical shock which caused a loss of vision in his left eye.

Plaintiffs filed this product liability suit against defendants, alleging negligence and breach of warranty in their manufacture and sale of the coil cradle machine. The basis for plaintiffs' allegations was defendant's failure to instruct or warn Prestige Stamping regarding the proper installation and wiring of a coil cradle.

Defendants jointly moved for summary disposition under MCR 2.116(C)(8) on the basis that they owed no duty to warn or instruct Prestige Stamping regarding the installation of the coil cradle. The trial court found that defendant had no duty to warn or instruct an experienced user of such mechanical equipment, and granted summary disposition for both defendants. Plaintiffs appeal as of right.

First, we note that defendants moved for summary disposition pursuant to MCR 2.116(C)(8) for failure to state a claim. However, the parties actually argued this motion pursuant to MCR 2.116(C)(10) on the basis that there was no genuine issue of material fact that defendants owed Prestige no duty to warn or instruct. A review of the record indicates that the trial court went outside the pleadings to determine this issue. Therefore, we review this order of summary disposition as one entered pursuant to MCR 2.116(C)(10). *Huff v Ford Motor Co,* 127 Mich App 287, 293; 338 NW2d 387 (1983).

A seller or manufacturer is generally liable in negligence for failure to warn purchasers or users of its product about dangers associated with intended uses and foreseeable misuses. *Antcliff v State Employees Credit Union,* 414 Mich 624, 637; 327 NW2d 814 (1982), reh den 417 Mich 1103 (1983); *Pettis v Nalco Chemical Co,* 150 Mich App 294, 301; 388 NW2d 343 (1986), lv den 426 Mich 881 (1986). This standard of care includes dissemination of information, either warnings or instructions, as is appropriate for the safe use of the product; such information must be adequate, accurate, and effective. *Pettis, supra,* p 302. However, there is no duty to warn of known or obvious product-connected dangers where the product itself is not defective or dangerous. *Antcliff, supra,* p

639. Whether a manufacturer owes a duty to warn or to instruct is a question of law for the court to decide. *Id.,* p 640.

A seller or manufacturer should be able to presume mastery of basic operations by experts or skilled professionals in an industry, and should not owe a duty to warn or instruct such persons on how to perform basic operations in their industry. *Id.,* pp 639-641; *Guaranteed Construction Co v Goldbond Products,* 153 Mich App 385, 398; 395 NW2d 332 (1986).

In *Antcliff, supra,* pp 639-641, the Supreme Court held as a matter of law that the manufacturer of a powered scaffold did not owe a duty to warn or to instruct experienced professional painters regarding the safe rigging of the scaffold. The Court noted that the manufacturer sold its product only to professionals experienced in rigging techniques, and concluded that the facts of that case did not require the manufacturer to provide instructions or warnings for the safe rigging of its product. *Id.,* pp 639-640. Although the Court characterized its holding as limited to the facts of the case, it also noted:

> There are countless skilled operations such as the rigging of scaffolding, which involve otherwise nondangerous products in potentially dangerous situations. A manufacturer of such a product should be able to presume mastery of the basic operation. The more so when, as here, the manufacturer affirmatively and successfully limits the market of its product to professionals. In such a case, the manufacturer should not be burdened with the often difficult task of providing instructions on how to properly perform the basic operation. [*Id.,* p 640.]

Defendants designed and sold their coil cradle

for use in the metal stamping industry, and sold only to professionals in that industry. As in *Antcliff,* there were no actual defects in the coil cradle machine itself, only its installation was faulty. Defendants sold their product to Prestige Stamping, Inc., a professional in that industry which had purchased at least fourteen of these coil cradles in the past, and presumably knew how to operate and install these machines. Defendants were entitled to presume that Prestige had mastery of the basic installation of coil cradles, and over such basic procedures as the connection of electrical cords to these machines. The dangers of carelessly wiring a machine to a 220-volt wall outlet are obvious to laymen, let alone professionals experienced in the use and installation of such machines. Under these circumstances, defendants owed Prestige Stamping no duty to warn or instruct regarding the proper connection of an electrical cord to the coil cradle.

Affirmed.