916 F.2d 713
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Nancy L. NOWAK, Plaintiff-Appellant,
v.
EMHART CORPORATION, Defendant-Appellee.
 No. 89-2336.
 United States Court of Appeals, Sixth Circuit.
 Oct. 18, 1990.
 
 Before KEITH and MILBURN, Circuit Judges, and THOMAS, Senior District Judge.*
 PER CURIAM.
 
 
 1
 Nancy L. Nowak appeals the district court's grant of summary judgment for Emhart Corporation ("Emhart") in this products liability action. For the following reasons, we affirm.
 
 I.
 A.
 
 2
 On October 10, 1985, Nancy L. Nowak suffered an injury while employed by Lamar Industrial Plastics in Sterling Heights, Michigan. Nowak was operating a plastic molding machine when the little finger of her left hand was cut off by a part of the mold being used on the machine.
 
 
 3
 The molding system on which Nowak was injured has two principal components. The first component is a plastic injection machine manufactured by Farrell, the predecessor of defendant-appellant Emhart Corporation. The injection machine is described by Emhart as a multi-purpose machine which injects plastic into a mold supplied by the machine's user so as to form plastic on or around a part or product. The injection machine is useless until the user installs a mold at the point of operation and incorporates the machine into a manufacturing system. The injection machine has a manually operated sliding safety gate which the operator must close before the machine will operate. The injection machine in this case was purchased by Lamar, Nowak's employer, as a used machine from a third party.
 
 
 4
 The second component of the molding system is the mold which is installed into the injection machine. In this case, Lamar installed a truck window mold, owned and supplied by General Motors Corporation (G.M.), into the injection machine and used the machine to form a plastic edge around truck windows. The mold had "push rods" which would eject the completed window from the mold and then retract into the mold for the next operation. The hydraulic "push rods" were activated by an electrical toggle switch installed by Lamar on the side of the injection machine. The toggle switch was unguarded and placed in close proximity to the mold's point of operation. Nowak's expert witness stated in a deposition that the toggle switch could have been located elsewhere on the injection machine or in the vicinity of the machine.
 
 
 5
 The Michigan Department of Labor cited Lamar for violating Michigan Occupational Health and Safety (MIOSHA) regulations in connection with Lamar's assembly and operation of the molding system. A citation issued on May 7, 1985, indicates that Lamar failed to interlock the safety gate on the injection machine with the mold's electrical and hydraulic devices, in violation of Mich. Admin. Code Reg. 408.16234(2). A February 10, 1986, citation indicates that Lamar failed to guard the pinch point on the push rods of the mold, in violation of Mich. Admin. Code Reg. 408.10034(a). The citation also states that Lamar failed to establish and train for a lockout procedure for servicing the molding system in violation of Mich. Admin. Code Reg. 408.16211(1) and (2).
 
 
 6
 The molding system operated in the following manner. With a window placed in the mold, the employee would close the safety gate on the injection machine, activate the machine, allow it to cycle, and open the safety gate when the operation was complete. The employee would next activate the push rods on the mold by flipping the toggle switch, and then reach into the mold to catch the finished window as it was ejected by the push rods. After setting the finished window aside, the employee would activate the toggle switch to retract the push rods, and then place a new window into the mold, close the safety gate on the injection machine and start the process again.
 
 
 7
 Nowak was injured while operating the molding system. Nowak's injury occurred while the injection machine was idle with its safety gate open. After Nowak removed a finished window from the mold, she reached into the mold to clear one of the plastic injectors and placed her left hand on one of the extended push rods. While Nowak's hand was on the push rod, the toggle switch was inadvertently activated, possibly by Nowak's other hand or a part of her body, and the little finger on her left hand was amputated by the push rod retracting into the mold.
 
 B.
 
 8
 Nowak filed the present action on June 13, 1988, against Emhart Corporation, the successor to the manufacturer of the injection machine, and United Shoe Machinery. United Shoe Machinery was later dismissed as a defendant by stipulation. Nowak's complaint alleges negligence, strict liability, and breach of express and/or implied warranty. The complaint asserts that Emhart (1) failed to design and manufacture the injection machine with adequate electrical switches, (2) failed to design and manufacture proper safety and guarding devices, and (3) failed to adequately and properly warn and instruct users and operators of risks of harm created by the machine.
 
 
 9
 On August 18, 1989, Emhart filed a motion for summary judgment, and a hearing was held on October 17, 1989. Following the hearing, the district judge rendered a decision from the bench granting Emhart's motion for summary judgment, and the court entered an order dismissing the action on October 30, 1989. The district court concluded that under Ross v. Jaybird Automation, Inc., 172 Mich.App. 603, 432 N.W.2d 374 (1988), the manufacturer, Emhart, owed no duty to the end user, Lamar, whose employee suffered an injury, "especially when the end user installs a satellite component part which is in violation of the law." J.A. at 194. The court added that even if there was a duty owed by Emhart, Nowak failed to satisfy the foreseeability test because "a manufacturer who sells products of such a specialty, as did Emhart, ... [could not and should not] have foreseen that an end user, such as Lamar, would install a component part improperly and illegally and in violation of the OSHA requirements." Id. This timely appeal followed.
 
 
 10
 The principal issue on appeal is whether the district court erred by granting summary judgment for Emhart.
 
 II.
 
 11
 Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. We review a district court's grant of summary judgment de novo, Pinney Dock and Transp. Co. v. Penn Cent. Corp., 838 F.2d 1445, 1472 (6th Cir.), cert. denied, 488 U.S. 880 (1988), viewing all facts and inferences drawn therefrom in the light most favorable to the nonmoving party. 60 Ivy Street Corp. v. Alexander, 822 F.2d 1432, 1435 (6th Cir.1987).
 
 
 12
 Nowak argues that Emhart owed a duty to the user of the injection machine to design and manufacture the machine so as to eliminate avoidable, unreasonable, and foreseeable risks. Nowak asserts that this duty includes providing adequate warnings and instructions for use of the machine, and the duty extends to include reasonably foreseeable misuse of the product. Thus, Nowak concludes that negligent or improper installation of an integral component by Lamar was a foreseeable risk which Emhart had a duty to reasonably avoid.
 
 
 13
 Nowak relies on the testimony of her expert witness, Ben J. Lehman, Rear Admiral USNR, that the injection machine was defective and unreasonably dangerous as designed. Lehman testified that because the injection machine requires installation of a mold to make it useable, Emhart should have anticipated the need for mechanical and electrical interfacing and should have preinstalled safety switches on the machine and provided technical information about the switches for a user to consult when installing a mold. Lehman further testified that electrical switches placed on the machine by Emhart could accommodate 90% to 95% of the molds to be used with the injection machine. J.A. at 80. Nowak asserts that had Emhart provided the safety switches and instructions suggested by Lehman, Lamar would not have improperly installed the mold and the toggle switch.
 
 
 14
 Nowak argues that since a mold must be installed to make the injection machine useable, it is foreseeable that a user may negligently install the mold, resulting in injury to the machine operator. She further argues that because Emhart's duty includes the responsibility to guard against foreseeable misuse, Lamar's installation of the mold and the switch "albeit in apparent violation of MIOSHA regulations, ... [was] nevertheless foreseeable and [did] not relieve the defendant of liability." Appellant's Brief at 12.
 
 
 15
 Nowak attempts to distinguish Ross, the case relied upon by the district court, by arguing that Ross involved improper installation of a non-defective mechanism, while the present case concerns improper installation caused by a defective machine or by lack of adequate instructions and warnings. Nowak argues that where a user is required to supply a component in order to make a product useable, the manufacturer should not be allowed to hide behind the user's negligence. Otherwise, Nowak asserts, "A manufacturer will merely leave off particular parts of his machine, to be supplied by someone else, so that he does not have to discharge his basic duties regarding safety, design, instruction and warning." Appellant's Brief at 14.
 
 
 16
 "In Michigan, two theories of recovery are recognized in the area of products liability: negligence and breach of implied warranty." Lemire v. Garrard Drugs, 95 Mich.App. 520, ----, 291 N.W.2d 103, 104 (1980). "Strict liability has not been recognized as a third theory of recovery." Johnson v. Chrysler Corp., 74 Mich.App. 532, ----, 254 N.W.2d 569, 571 (1977). Moreover,
 
 
 17
 [w]hen, as in this case, theories of negligence and implied warranty are both premised on an allegedly improper design of the product, the legal elements of the two theories converge to the point of identicalness; proofs that suffice for one theory will suffice for the other; proofs that fail to establish a prima facie case on one theory are equally inadequate for the other.
 
 
 18
 Reeves v. Cincinnati, Inc., 176 Mich.App. 181, ----, 439 N.W.2d 326, 328 (1989), appeal denied, 434 Mich. 894 (1990). Under both theories, liability turns on "whether the manufacturer took reasonable care in light of any reasonably foreseeable use of the product which might cause harm or injury." Id. (quoting Prentis v. Yale Mfg. Co., 421 Mich. 670, 695, 365 N.W.2d 176, ---- (1984)). "A similar rule prevails in the context of a claim that the manufacturer breached a duty to give a warning; viewed as either negligence or breach of an implied warranty, both theories 'involve identical facts and require proof of exactly the same elements.' " Id. (quoting Smith v. E.R. Squibb & Sons, Inc., 405 Mich. 79, 90, 273 N.W.2d 476, ---- (1979)). The legal standard to be applied under either theory is "reasonable care under the circumstances." Id.
 
 
 19
 In Fredericks v. General Motors Corp., 411 Mich. 712, 311 N.W.2d 725 (1981), the plaintiff injured his hand while operating an unguarded power press during the course of his employment. He brought a products liability action against the owner of the die being used in the press at the time he was injured, arguing that his injury resulted from the absence of a guard on the die. The Michigan Supreme Court observed that while the plaintiff's injury may have resulted from the absence of guarding, "this accident might have been prevented by guarding on the press instead of the die." Id., 411 Mich. at ----, 311 N.W.2d at 728. The court stated, "An unguarded die may be used in a reasonably safe manner in a guarded press or in an unsafe manner in an unguarded press." Id. In light of the statutory duty imposed on the plaintiff's employer to establish and maintain reasonably safe and healthful working conditions, the court concluded that it could not "hold as a matter of law that it was foreseeable to defendant that the product it supplied would be used in an unsafe manner rendering it defective." Id.
 
 
 20
 In Villar v. E.W. Bliss Co., 134 Mich.App. 116, 350 N.W.2d 920 (1984), appeal denied, 422 Mich. 871, 365 N.W.2d 758 (1985), the plaintiff was injured while operating a press manufactured by the defendant, and he filed an action based upon theories of negligence in the design of the press and breach of implied warranty. The Michigan Court of Appeals followed Fredericks and reversed a jury verdict for the plaintiff. The court reasoned that the press manufactured by the defendant, like the defendant's dies in Fredericks, was only part of a press system and the "press was harmless and inoperable unless incorporated into such a system." Id., 350 N.W.2d at 922. The court added, "[A]s in Fredericks, a statute in existence at the time of plaintiff's injury placed a duty on the employer to maintain a reasonably safe workplace." Id. The court concluded, "Because Fredericks shows that it was not foreseeable that plaintiff's employer would fail to incorporate the press into a press system containing adequate safety devices, the trial court erred by declining to grant defendant's motion for a directed verdict." Id.; see Bullock v. Gulf & Western Mfg., 128 Mich.App. 316, 340 N.W.2d 294 (1983).
 
 
 21
 The court in Villar also emphasized "that defendant's press was multi-purpose and that this meant it was designed for a wide variety of operations." 134 Mich.App. at ----, 350 N.W.2d at 922. The court noted that the plaintiff's expert "admitted it was impossible for defendant to install a safety device which would cover all purposes to which the press could be assigned." Id. Thus, the court reasoned that "absent evidence that defendant knew or had specific reason to know that the original purchaser would use the press unsafely, it had no duty to provide safety devices not ordered by that purchaser." Id. The court concluded that "the specific use to which plaintiff's employer put the machine was not foreseeable without some evidence that defendant knew or should have known of the purchaser's unsafe use." Id. (emphasis in original).
 
 
 22
 In Wessels v. E.W. Bliss Co., 180 Mich.App. 440, ----, 447 N.W.2d 758, 759 (1989), the plaintiff filed a products liability action for injuries sustained when the cycling action of a power press severed several fingers from his left hand. The trial court granted summary judgment for the defendant on the basis of the legal rationale stated in Villar. On appeal, the Michigan Court of Appeals identified three criteria to be satisfied before invoking the holding in Villar:
 
 
 23
 (1) the press must be inoperable until it is integrated by the user (employer of the injured plaintiff) into its manufacturing processes, (2) the user, as the plaintiff's employer, owes the plaintiff a duty to provide a safe workplace pursuant to M.C.L. Sec. 408.1011; M.S.A. Sec. 17.50(11), and (3) the specific unsafe application of the press causing the accident was not foreseeable from the manufacturer's standpoint.
 
 
 24
 Id. In Wessels, the court concluded that the last criterion was not satisfied.
 
 
 25
 The press in Wessels, like the press in Villar, "was designed for multiple, but not an infinite number of, purposes and was incapable of causing injury of the nature sustained by plaintiff at the time of its sale by defendant." Id., 447 N.W.2d at 760. The defendant in Wessels argued that the manufacturer or seller "of a press suitable for multiple purposes need not anticipate a particular application of the press and design a safety device that would be specific to that particular application." Id. However, the plaintiff submitted a consulting engineer's affidavit which stated that the press should have incorporated a single-stroke mechanism to prevent an unintended repeat stroke. The plaintiff's engineer stated that this safety device "relates to the construction of the press, and is irrespective of the kind of point-of-operation safeguarding selected for the kind of tooling involved, and the related method of loading and unloading." Id. In other words, the single-stroke mechanism could have been incorporated into the press "regardless of the particular use to be made of the subject press by the purchaser." Id. The Michigan Court of Appeals concluded that this evidence satisfied the plaintiff's "burden of showing a genuine issue of fact by controverting whether it was foreseeable that all potential applications of the press were unsafe in light of the failure to provide a single-stroke mechanism." Id. Thus, the court reversed the trial court's grant of summary judgment for the defendant.
 
 
 26
 Applying the three criteria identified in Wessels to the present case, we conclude that the district court properly granted summary judgment for Emhart. First, the injection machine is inoperable until the user integrates the machine into its manufacturing process by installing a mold. In this case, Lamar installed a truck window mold into the injection machine. The second criterion is satisfied because the user, Lamar, owed a duty to Nowak to provide a safe workplace pursuant to Mich.Comp. Laws Sec. 408.1011. Lamar breached this duty by locating the toggle switch which activated the push rods in close proximity to the point of operation.
 
 
 27
 The third criterion concerns foreseeability and examines whether the failure to provide a safety device made the machine unsafe for all potential applications. In Wessels, the court held that the plaintiff created a genuine issue of fact regarding foreseeability by submitting an affidavit of a consulting engineer that stated a safety device could have been incorporated into the press regardless of the specific use to which the purchaser put the press. The affidavit created a genuine issue of fact as to "whether it was foreseeable that all potential applications of the press were unsafe...." Id., 447 N.W.2d at 760 (emphasis added). Similarly, in Reeves v. Cincinnati, Inc., 176 Mich.App. 181, ----, 439 N.W.2d 326, 330 (1989), the court distinguished Villar because the "plaintiffs' expert testified that an adjustable barrier guard could have been designed and that this guard would have been functional under any of the limited number of applications for which the multiple purpose press was designed." (Emphasis added). However, in Villar, the third criterion was satisfied because the plaintiff's expert "admitted it was impossible for defendant to install a safety device which would cover all purposes to which the press could be assigned." 134 Mich.App. at ----, 350 N.W.2d at 922 (emphasis added). Thus, in Villar the specific unsafe application of the press was not foreseeable from the manufacturer's standpoint.
 
 
 28
 Nowak fails to meet her burden of showing a genuine issue of fact regarding foreseeability. Nowak's expert witness testified that Emhart should have installed safety switches on the injection machine, and he opined that the switches could accommodate 90% to 95% of the molds to be used with the machine. Although the expert's testimony suggests that if safety switches were included the machine would remain functional for a high percentage of its designed applications, he did not testify that the switches "would have been functional under any of the limited number of applications for which the multiple purpose [machine] was designed." Reeves, 176 Mich.App. at ----, 439 N.W.2d at 330. The expert's testimony effectively concedes that "it was impossible for defendant to install a safety device which would cover all purposes to which the press could be assigned." Villar, 134 Mich.App. at ----, 350 N.W.2d at 922. (emphasis added). Therefore, "it is unforeseeable from the standpoint of the manufacturer how the employer will use a [machine] designed to accommodate multiple purposes, thereby defeating any attempt to anticipate and protect against the specific unsafe application of the [machine] by installing an appropriate guard in advance of its sale to the user." Reeves, 176 Mich.App. at ----, 439 N.W.2d at 330. Thus, Nowak fails to create a genuine issue of fact regarding foreseeability, and the district court properly granted summary judgment on the defective design claim.
 
 
 29
 Nowak also argues that the district court erred by granting summary judgment on the issue of whether Emhart had a duty to warn of any dangers associated with the use of the injection machine. "A manufacturer is liable in negligence for failure to warn the purchasers or users about dangers associated with intended use, as well as those associated with foreseeable misuse." Bullock, 128 Mich.App. at ----, 340 N.W.2d at 297. "However, there is no duty to warn of known or obvious product-connected dangers where the product itself is not defective or dangerous." Ross, 172 Mich.App. at ----, 432 N.W.2d at 376. "A seller or manufacturer should be able to presume mastery of basic operations by experts or skilled professionals in an industry, and should not owe a duty to warn or instruct such persons on how to perform basic operations in their industry." Id. Whether a duty to warn exists is a question of law for the court to decide. Id.
 
 
 30
 In the present case, there were no defects in the injection machine, but Lamar's faulty installation of the toggle switch created a danger. Lamar breached its statutory duty to provide a safe workplace by installing the toggle switch on the injection machine in close proximity to the point of operation. Fredericks establishes that it is unforeseeable that an employer who owes a statutory duty to provide a safe workplace would fail to incorporate a component into a production system containing adequate safety devices. Villar, 134 Mich.App. at ----, 350 N.W.2d at 922. Where product modifications are not foreseeable, a manufacturer has no duty to warn about possible dangers from the modifications. Trotter v. Hamill Mfg. Co., 143 Mich.App. 593, ----, 372 N.W.2d 622, 626 (1985). Because Lamar's breach of its statutory duty was not foreseeable, Emhart had no duty to warn of dangers created by the improper installation of the toggle switch.
 
 III.
 
 31
 For the foregoing reasons, the district court's grant of summary judgment is AFFIRMED.
 
 
 
 *
 Honorable William K. Thomas, Senior United States District Judge for the Northern District of Ohio, sitting by designation