575 A.2d 100

William W. MACKOWICK, Jr. and Margaret Mackowick,
his wife, Appellants,

v.

WESTINGHOUSE ELECTRIC CORPORATION, Appellee.

Supreme Court of Pennsylvania.

Argued Sept. 29, 1989.

Decided May 22, 1990.

Maureen Dunn Harvey, Wallace, Chapas & Associates, Poughkeepsie, for appellants.

Kenneth S. Mroz, Dickie, McCamey & Chilcote, P.C., Poughkeepsie, for amicus curiae, Pa. Defense Institute.

Richard H. Galloway, Galloway, DeBernardo, Antoniono & McCabe P.C., Greensburg, for Pa. Trial Lawyers Ass'n.

Frederick N. Egler, Egler, Anstandig & Garrett, Pittsburgh, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

## OPINION.

NIX, Chief Justice.

The appellant here requests that this Court reverse the decision of the Superior Court, 373 Pa.Super. 434, 541 A.2d 749, which affirmed the judgment entered by the Court of Common Pleas of Allegheny County. For the following reasons we conclude that as a matter of law appellant failed

to state a cause of action in strict liability based upon inadequate warning, and the judgment of the Superior Court must be affirmed.

In December, 1982, the appellant, William Mackowick, was installing an electrical capacitor in the switchgear room at Western Pennsylvania Hospital. The room had high voltage warnings on its door and was unlocked for authorized persons only. During the installation, one of the appellant's co-workers removed the cover from the operating Westinghouse capacitor. On the lid was a warning to users which stated:

THIS CAPACITOR CONTAINS BUILT–IN DISCHARGE RESISTORS. CAUTION! WAIT FIVE MINUTES AFTER DISCONNECTING. THEN SHORT CIRCUIT THE TERMINALS AND GROUND THE CAPACITOR BEFORE HANDLING.

The appellant had similarly removed the lid to the Westinghouse capacitor several weeks prior to the accident and was aware of the warning written on the cover. He began to warn his co-worker of the danger of the live, uninsulated fuses inside the capacitor. As appellant pointed a screwdriver into the live capacitor, the electricity from the capacitor explosively flashed or "arced", and he was severely burned.

Appellant filed suit against Westinghouse, as the manufacturer of the capacitor, on a products liability theory alleging that Westinghouse provided inadequate warnings of the dangers of electrical "arcing" inherent in the unit. Westinghouse claimed the plaintiff assumed the risk of pointing a screwdriver near uninsulated fuses because, as an experienced electrician of 30 years, he was aware of the dangers of "arcing" regardless of the adequacy of the warning. After a four-day trial, the jury found in favor of Westinghouse.

Appellant appealed the judgment claiming the trial judge instructed the jury incorrectly as to this Commonwealth's law of assumption of risk. A panel of the Superior Court reversed the trial court and remanded the case for new

trial. Reargument was granted before the Superior Court *en banc* and the judgment of the trial court was affirmed.

Appellant complains that the charge given to the jury misstated the law of assumption of risk, as it has been applied in this Commonwealth. The specific language of the trial judge concerning assumption of risk stated:

> For you to find that a Plaintiff assumed the risk of his injury, you must find that the Plaintiff was aware of the danger presented by Defendant's product and ... voluntarily proceeded to encounter the danger. The Plaintiff must have realized the danger, but not necessarily the specific defect itself, just the danger.

(N.T. 359–350)

Appellant asserts the trial judge's charge that it was unnecessary for a plaintiff to know of the specific defect was contrary to existing law. He relies on the plurality opinion of this Court in *Berkebile v. Brantly Helicopter Corporation*, 462 Pa. 83, 337 A.2d 893 (1975),[1] for the proposition that a plaintiff must have known of the specific defect to assume the risk. In *Berkebile*, this Court was faced with several alleged defects of a commercial helicopter, including a failure to provide adequate warnings, and the defense of assumption of risk. The Court stated, with regards to assumption of risk:

> A plaintiff cannot be precluded from recovery in a strict liability case because of his own negligence. He is precluded from recovery only if he *knows of the specific defect* eventually causing his injury and voluntarily proceeds to use the product with *knowledge of the danger* caused by the defect. (Emphasis added.)

*Id.*, 462 Pa. at 100, 337 A.2d at 901.

■ While this argument may be facially appealing, the fundamental error involved in this case relates to the trial judge's determination to allow the issue of whether or not the product was defective to go to the jury. Mr. Mackowick

---

**1.** The opinion announcing the judgment of the court was joined only by two members of the Court.

did not seek recovery in strict liability on a mechanical defect. He alleged the warnings provided by Westinghouse were inadequate to make this inherently dangerous product safe for use by the ultimate consumer. It is well settled a dangerous product can be considered "defective" for strict liability purposes if·it is distributed without sufficient warnings to notify the ultimate user of the dangers inherent in the product. *Sherk v. Daisy–Heddon, Etc.*, 498 Pa. 594, 450 A.2d 615 (1982); *Azzarello v. Black Bros. Co., Inc.*, 480 Pa. 547, 391 A.2d 1020 (1978); *Berkebile v. Brantly Helicopter Corp., supra; Salvador v. Atlantic Steel Boiler Co.*, 457 Pa. 24, 319 A.2d 903 (1974); *Webb v. Zern*, 422 Pa. 424, 220 A.2d 853 (1966); *see also,* Restatement (Second) of Torts § 402A comment h. Such warnings must be directed to the understanding of the intended user. *See Sherk, supra; Berkebile, supra; Incollingo v. Ewing*, 444 Pa. 263, 282 A.2d 206 (1971); *see also, Brown v. Caterpillar Tractor Co.*, 741 F.2d 656 (3rd Cir.1984); *Jackson v. Coast Paint and Lacquer Co.*, 499 F.2d 809 (9th Cir.1974). The duty to adequately warn does not require the manufacturer to educate a neophyte in the principles of the product. A warning of inherent dangers is sufficient if it adequately notifies the intended user of the *unobvious* dangers inherent in the product.

■ The determinations of whether a warning is adequate and whether a product is "defective" due to inadequate warnings are questions of law to be answered by the trial judge. As this Court stated in *Azzarello, supra:*

These are questions of law and their resolution depends upon social policy. Restated, the phrases "defective condition" and "unreasonably dangerous" as used in the Restatement formulation are terms of art involved when *strict liability* is appropriate. It is a judicial function to decide whether, under the plaintiff's averment of the facts, recovery would be justified; and only after this judicial determination is made is the cause submitted to

the jury to determine whether the facts of the case support the averments of complaint.

*Id.*, 480 Pa. at 558, 391 A.2d at 1026.

Other jurisdictions have similarly held that the determinations of whether a cause of action under strict liability is supported by sufficient evidence and whether the manufacturer should be burdened with the duty to warn of specific dangers are questions of law to be answered by the courts. *See Byrne v. SCM Corp.*, 182 Ill.App.3d 523, 131 Ill.Dec. 421, 538 N.E.2d 796 (1989); *Huber v. Niagara Machine & Tool Works*, 430 N.W.2d 465 (Minn.1988); *Butz v. Werner*, 438 N.W.2d 509 (N.D.1989); *Ewen v. McLean Trucking Co.*, 70 Or.App. 595, 689 P.2d 1309 (1984); *Munoz v. Gulf Oil Co.*, 732 S.W.2d 62 (Tex.App. Houston (14th Dist.) 1987); and *O'Donnell v. City of Casper*, 696 P.2d 1278 (Wyo.1985).

In a factually similar case a Michigan appellate court held that the question of whether a manufacturer must warn a professional of the dangers expected to be known by the professional was a question of law to be decided by the court and not by the jury. In *Ross v. Jaybird Automation, Inc.*, 172 Mich.App. 603, 432 N.W.2d 374 (1988), *citing, Antcliff v. State Employees Credit Union*, 414 Mich. 624, 327 N.W.2d 814 (1982), the court stated:

> Whether a manufacturer owes a duty to warn or to instruct is a question of law for the court to decide.... A seller or manufacturer should be able to presume mastery of basic operations by experts or skilled professionals in an industry, and should not owe a duty to warn or instruct such persons on how to perform basic operations in their industry. (Citation omitted.)

*Id.*, 172 Mich.App. at 607, 432 N.W.2d at 377.

■ Here, appellant specifically contends an adequate warning for this capacitor would necessarily include language about the possibility of arcing without the user actually touching the live fuses. However, arcing itself is not the danger requiring a warning in this instance. The danger to be warned against is the live, exposed electricity. Arcing is a principle of electricity and a propensity of

exposed high voltage electrical power. Such principles are expected to be known by a skilled electrician. This product was intended to be used only by qualified electricians who would be aware of the dangers of arcing in such equipment.[2]

■ The warning provided on the lid of the capacitor clearly instructed the user to ground the electricity before handling and thereby relieve any danger of electrocution from the uninsulated, live electrical source. The warning addressed the danger inherent in the product and was sufficient for the intended user. Here, an electrician with 30 years of experience and training was more than adequately alerted to the danger. With a sufficient warning present, this product should not have been considered "defective" and the cause of action in strict liability should have failed as a matter of law.

As the following excerpts from side bar conversations between the trial judge and both counsel reflect, the trial judge wrestled with his uncertainty as to the resolution of this issue.

Mr. Egler (defense counsel): The plaintiff was aware of the danger of the voltage. He was aware of the fact that the fuse was live.

The Court: It is a most unusual situation in that respect.

*    *    *    *    *    *

The Court: We have here a situation where the man says he knows the danger.

Mr. Jamiolkowski (plaintiff's counsel): Well, he does not know the particular danger. He testified he had no idea if he didn't touch this particular piece of equipment that it would have done anything to him.

The Court: Now, he knew of arcing.

2. The capacitor was accessed only by those authorized to work with high voltage electricity. The equipment was kept in a locked room and a warning on the door of the room warned of the dangers of high voltage in order to protect unsuspecting laypersons.

Mr. Jamiolkowski: Well, he knew of arcing, but he had no idea—his definition of arcing was the only time that he had experience with it was when he—

The Court: It is a very unusual situation.

(N.T. 171–172)

The Court later stated:

I would agree if I were making the law. To me, this is all irrelevant whether the person knew all about this. But my perception of the law of Pennsylvania as it exists now is that—well, lets put it this way. If I exclude this testimony, that is virtually the same as a directed verdict. (N.T. at 181)

It should be clear from the above that the trial judge correctly assessed the problem with the appellant's case but chose to disregard his instincts and submit the case to the jury. It was that decision which is fundamental error. As a matter of law, resolution of this question should have been made by the court and not submitted to the jury. Thus, we find appellant's claim of error regarding the jury charge for assumption of risk need not be addressed.

Judgment of the Superior Court is affirmed.

PAPADAKOS, J., concurs in the result.

LARSEN, J., files a dissenting opinion.

McDERMOTT, J., did not participate in the consideration or decision of this case.

LARSEN, Justice, dissenting.

On December 28, 1982, Appellant, William Mackowick, a journeyman electrician employed by Star Electric, was installing high voltage capacitors in the Mellon Pavillion at West Penn Hospital. While wiring a new capacitor, Appellant noticed that a fellow electrician had removed the cover from an existing energized 4,160 volt Westinghouse capacitor. A capacitor is a device for accumulating and holding a charge of electricity, consisting of live, uninsulated fuses within a metal support structure or box. Inside the cover

was a warning label provided by Appellee which instructed the user to ground the electricity before *handling.* The label did not warn of the propensity of the electricity to "arc." Arcing occurs when an instrument or object by which the electricity seeks ground is close enough so that the electricity arcs to the instrument or object and thereby flows through it. Appellant walked over to warn the electrician of the danger associated with the exposed energized capacitor. As he spoke, Appellant pointed a screwdriver with his left hand toward the capacitor box. The screwdriver did not come into contact with the live fuses within the capacitor. However, electricity flowing through the fuses arced to him sending a high voltage electric current through his body. Appellant sustained severe burns, was hospitalized for ten days and was unable to return to work for three months.

Appellant, along with his wife, commenced a products liability action against Appellee, Westinghouse, as manufacturer of the capacitor, on the theories of inadequate warnings *and* design defect. Appellee asserted the defenses of assumption of the risk and abnormal use. Following a four day trial, the jury returned a verdict in favor of Appellee. Appellant appealed to Superior Court claiming that the trial judge erred in instructing the jury on the law of assumption of the risk in Pennsylvania. A panel of the Superior Court reversed the trial court and remanded the case for new trial. Upon reargument, an *en banc* panel of the Superior Court found this same instruction on assumption of the risk to be proper and, therefore, affirmed the judgment of the trial court. Appellant successfully petitioned this Court for allowance of appeal raising the sole issue of whether the trial judge erred in his instruction to the jury on the law of assumption of the risk in Pennsylvania.

The majority of this Court chooses to ignore the only issue presented for review and, instead, disposes of this case by finding fundamental error in the trial judge's allowing the issue as to whether a defect existed due to an inadequate warning to be submitted to the jury. This issue

was neither raised in the proceedings below nor in the briefs of the parties. The well-settled rule in Pennsylvania is that issues not raised in the lower court are waived and cannot be raised for the first time on appeal. Pa.R.A.P. 302(a). Such a rule is a fundamental principle of jurisprudence and applies to both the parties to the proceedings as well as any attempt by the court to act as co-counsel for either party. *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974); *Commonwealth v. Piper*, 458 Pa. 307, 328 A.2d 845 (1974); *See also* Chief Justice Nix's dissenting opinion in *Commonwealth v. Stonehouse*, 521 Pa. 41, 555 A.2d 772 (1989). Since the issue regarding the alleged error of the trial judge in submitting to the jury the issue of defect due to inadequate warning was not properly before this Court, I dissent.[1]

As stated, the sole question presented for review is whether the trial judge erred in his instruction to the jury on the law of assumption of the risk in Pennsylvania. The trial court's instruction on assumption of the risk was as follows:

"If you find that the Defendant's product was defective and that the defect was a substantial factor in causing the Plaintiff's injury, but that the plaintiff assumed the risk of a dangerous thing which he knows to be dangerous and despite his knowledge proceeds to assume the risk of using it or coming into contact with it in a manner that is not appropriate, then that is a defense available to the manufacturer, and the manufacturer is not liable for injuries caused in such circumstances.

For you to find that a Plaintiff assumed the risk of his injury, you must find that the Plaintiff was aware of the danger presented by Defendant's product and voluntarily proceeded to encounter the danger. *The Plaintiff must have realized the danger but not necessarily the specific defect itself, just the danger.*" (R.R. 359a–360a) (emphasis added).

---

**1.** I also disagree with the analysis of the issue raised, *sua sponte*, by the majority. I would hold that the issue of defect due to inadequate warning was properly submitted to the jury.

The above instruction is a misstatement of Pennsylvania law. Section 402A of the Restatement (Second) of Torts provides:

> Contributory negligence of the plaintiff is not a defense when such negligence consists merely in a failure to discover the defect in the product, or to guard against the possibility of its existence. On the other hand the form of contributory negligence which consists in voluntarily and unreasonably proceeding to *encounter a known danger*, and commonly passes under the name of assumption of risk, is a defense under this Section as in other cases of strict liability. If the user or consumer discovers the defect and is aware of the danger, and nevertheless proceeds unreasonably to make use of the product and is injured by it, he is barred from recovery.

Restatement (Second) of Torts, § 402A, comment n, (1965).

Section 402A has been adopted by this Court in *Ferraro v. Ford Motor Co.*, 423 Pa. 324, 327, 223 A.2d 746, 748 (1966). Furthermore, a plaintiff must have known of the "specific defect" which caused his injury in order for the elements of the defense of assumption of the risk to be present. *See Ferraro, supra* (plaintiff unaware of specific defect so elements of defense not present); *see also Berkebile v. Brantly Helicopter Corp.*, 462 Pa. 83, 337 A.2d 893 (1975) (plurality opinion) (plaintiff precluded from recovery only if he knows of a specific defect.) A plaintiff must not only be aware of the facts which create the danger, he must also appreciate the danger itself, and the nature, character, and extent which makes his behavior unreasonable. Restatement, *supra*, § 496D, comment b; *see also Rutter v. Northeastern Beaver County*, 496 Pa. 590, 437 A.2d 1198 (1981) (plurality opinion). Thus, in order for Appellant to have assumed the risk of his injury he must have known that the electricity could arc to him and the extent of the danger posed thereby. This propensity of the electricity to arc is the alleged specific defect of the capacitor. The instruction given by the trial judge to the jury in this case was incorrect since it implied that Appellant had assumed

the risk if he was merely aware of a general danger of being exposed to 4160 volts of electricity.

A finding of assumption of the risk must be based on the individual's own subjective knowledge, not upon the objective knowledge of a "reasonable man." Restatement, *supra*, § 496D, comment c; *see also Berkebile, supra.* The objective "reasonable man" standard is only considered in the context of proceeding unreasonably after it has been established that the plaintiff had actual knowledge of the specific defect. *Ferraro, supra.* In the present case, Appellant testified that he did not know arcing could occur from a live fuse. (R.R. 104a–105a). He further testified that he believed his hand to be in a safe position when he pointed to the fuses inside the capacitor box. Appellant stated "I know the metal of the box was closer than I was.... So I felt there was no reason for it to arc to me. Otherwise I wouldn't have stood there." (R.R. 105a). This evidence, when coupled with a jury instruction that correctly states the law in Pennsylvania regarding assumption of the risk, would provide a sufficient basis upon which a jury could conclude that Appellant did not assume the risk of any injury caused by electric arcing.

For the above reasons, I would reverse Superior Court and remand for new trial.