968 F.2d 380
 J. MEADE WILLIAMSON AND F.D.I.B., INC.
v.
PIPER AIRCRAFT CORPORATION and Teledyne Continental Motors
Aircraft Products Division, a Division of Teledyne
Industries, Inc., the Federal Aviation
Administration, and United
States of America
v.
BRADEN'S FLYING SERVICE, INC., Robert S. Mejia, Parker
Hannifin, Airborne Division, Kenneth E. Davis,
Robert M. Wreski and F.D.I.B. and Mil, Inc.,
Parker Hannifin, Airborne Division, Appellant in No. 91-1621,
Teledyne Continental Motors Aircraft Products, a Division of
Teledyne Industries, Inc., Appellant in No. 91-1686.
Robert S. MEJIA
v.
PIPER AIRCRAFT CORPORATION, and Teledyne Continental Motors
Aircraft Products Division, a Division of Teledyne
Industries, Inc., and Penn Jersey Piper Sales, Inc., and
Braden's Flying Service, Inc., and Kenneth E. Davis and
Martin W. Wreski and Sherry M. Mraovich and Cynthia M.
Penkava, United States of America
v.
J. MEADE WILLIAMSON, MIL, INC. and Future Directions in
Banking, Inc. and F.D.I.B., Mil, Inc., and J.
Meade Williamson,
Parker Hannifin, Airborne Division,*
Appellant in No. 91-1622,
Teledyne Continental Motors Aircraft Products, a Division of
Teledyne Industries, Inc., Appellant in No. 91-1687.
J. Meade WILLIAMSON and F.D.I.B., Inc.
v.
PIPER AIRCRAFT CORPORATION, Teledyne Continental Motors
Aircraft Products Division, a Division of Teledyne
Industries, Inc., Kenneth E. Davis and
Robert M. Wreski
v.
UNITED STATES of America, Robert S. Mejia, Braden's Flying
Service, Inc., Sherry M. Mraovich and Cynthia M.
Penkava, Parker Hannifin, Airborne Division
v.
F.D.I.B., MIL, INC. and Robert S. Mejia,
Parker Hannifin, Airborne Division, Appellant in No. 91-1623,
Teledyne Continental Motors Aircraft Products, a Division of
Teledyne Industries, Inc., Appellant in No. 91-1688.
John T. KOCHIE, Jr. and Patricia Kochie, his wife
v.
PIPER AIRCRAFT CORPORATION, Teledyne Industries, Inc., Penn
Jersey Piper Sales, Inc., Braden's Flying Service,
Inc., United States of America
v.
J. Meade WILLIAMSON, Kenneth E. Davis, Robert M. Wreski,
Braden's Flying Service, Inc., Sherry M. Mraovich, Cynthia
M. Penkava, United States, Parker Hannifin Corp., F.D.I.B.,
Mil, Inc., and F.D.I.B., Inc.,
Parker Hannifin, Airborne Division, Appellant in No. 91-1624,
Teledyne Continental Motors Aircraft Products, a Division of
Teledyne Industries, Inc., Appellant in No. 91-1689.
William BERNHARD, III, Administrator of the Estate of
William Bernhard, IV, Dec'd, and William Bernhard,
III and Sandra Bernhard, in their own right
v.
PIPER AIRCRAFT CORPORATION, Teledyne Continental Motors,
Inc. and Penn Jersey Piper Sales, Inc.
v.
J. Meade WILLIAMSON, Kenneth E. Davis, Robert M. Wreski,
Braden's Flying Service, Inc., and Future
Directions in Banking, Inc., t/a FDIB
Corporation, United States of America,
Parker Hannifin, Airborne Division,*
Appellant in No. 91-1625,
Teledyne Continental Motors Aircraft Products, a Division of
Teledyne Industries, Inc., Appellant in No. 91-1690.
Carol W. BELLWOAR
v.
TELEDYNE CONTINENTAL MOTORS INC., Piper Aircraft Corp.,
Davis Aircraft Products, Inc., Braden's Flying
Services, Inc., J. Meade Williamson
v.
UNITED STATES of America, Martin Wreski, Kenneth E. Davis,
Sherry M. Mraovich, Cynthia M. Penkava, Parker Hannifin,
Airborne Division, F.D.I.B. and Mil, Inc., F.D.I.B., Inc.,
Robert S. Mejia, J. Meade Williamson, United States of America,
Parker Hannifin, Airborne Division, Appellant in No. 91-1626,
Teledyne Continental Motors Aircraft Products, a Division of
Teledyne Industries, Inc., Appellant in No. 91-1691.
 Nos. 91-1621, 91-1686, 91-1622, 91-1687, 91-1623, 91-1688,
91-1624, 91-1689, 91-1625, 91-1690, 91-1626 and 91-1691.
 United States Court of Appeals,
Third Circuit.
 Argued March 9, 1992.
Decided June 29, 1992.
Rehearing Denied July 24, 1992.
 
 J. Bruce McKissock (argued), William J. Mundy, Donald J. Brooks, Jr., McKissock & Hoffman, Philadelphia, Pa., for Parker Hannifin Corp.
 Harry A. Short, Jr., Liebert, Short & Hirshland, Philadelphia, Pa., for Piper Aircraft Corp.
 John S. Bagby, Jr. (argued), Ralph J. Luongo, Charles E. Pugh, Pamela A. Crowther, Rawle & Henderson, Philadelphia, Pa., for Teledyne Continental Motors Aircraft Products, a Division of Teledyne Industries, Inc.
 Present: HUTCHINSON, ALITO and HIGGINBOTHAM, Circuit Judges.
 OPINION OF THE COURT
 HUTCHINSON, Circuit Judge.
 
 
 1
 Appellant Parker Hannifin Corporation, Airborne Division (Parker) appeals the district court's order denying Parker's post-trial motions for judgment n.o.v. or a new trial. Appellee Teledyne Continental Motors Aircraft Products (TCM) cross-appeals from the district court's denial of its motion for prejudgment interest. We will affirm.[1] Parker raises numerous issues on appeal. Only its argument that the district court erred in imposing a duty on it to provide installation instructions for the standby vacuum pump to Piper Aircraft Corporation (Piper) requires discussion under evolving Pennsylvania law concerning the manufacturer of a product component's duty to warn.[2]
 
 I.
 
 2
 This case arose out of the crash of a Piper Malibu aircraft on August 15, 1986. Two occupants died and two were seriously injured. Product liability and negligence claims were filed against TCM, the engine manufacturer, Piper, the aircraft frame manufacturer, and the United States. Parker, manufacturer of the standby vacuum pump, Robert Mejia, the pilot, J. Meade Williamson/FDIB Ltd., the aircraft owner, and Braden's Flying Service (Braden's), a maintenance facility, were later joined as third party defendants. Before trial TCM settled all the plaintiffs' claims for $12.5 million and then sought contribution or indemnity from the other defendants. TCM eventually entered into settlement agreements with all the defendants except Piper, Parker and the United States.
 
 
 3
 TCM's claims for contribution or indemnity against Piper, Parker and the United States went to trial on January 22, 1991. The district court directed a verdict against TCM on its indemnity claims and only its contribution claim went to the jury. The jury returned a verdict apportioning liability 41% to TCM, 47% to Piper and 12% to Parker.[3] On February 25, 1991, judgment for contribution was entered in favor of TCM and against Piper for $5.8 million and in favor of TCM and against Parker for $1.5 million. Judgment was also entered in favor of the United States and against TCM. Parker filed post-trial motions seeking judgment n.o.v. or in the alternative, a new trial. TCM also filed a motion seeking pre-judgment interest. The motions were denied on June 26 and 28, 1991. On July 2, 1991, Piper filed for relief under Chapter 11 of the Bankruptcy Code. On July 23, 1991, TCM filed a motion in the district court "to amend the judgment to increase contribution" from Parker by requiring Parker to bear a portion of the shortfall created by Piper's bankruptcy filing.
 
 
 4
 On July 25, 1991, Parker filed its notice of appeal. TCM filed a cross-appeal on the district court's denial of its motion for pre-judgment interest. By Memorandum and Order of November 21, 1991, the district court recognized that it was without jurisdiction to grant TCM's motion to amend the judgment based on Piper's bankruptcy, but stated that it would grant the motion if we were to remand the case to it for that purpose. TCM moved for a remand. We took the motion for remand under advisement. Our disposition of the appeal and cross-appeal without acting on it is the equivalent of a denial.[4]
 
 II.
 
 5
 On August 15, 1986, a Piper Malibu aircraft departed the Greater Pittsburgh airport to return to Philadelphia. Fifteen minutes after takeoff, the engine failed. The plane crashed while attempting to glide to the Allegheny Airport. The aircraft was designed and manufactured by Piper. Its engine was manufactured for Piper by TCM. A standby vacuum pump was attached to the engine by Piper. This pump was designed and manufactured by Parker specifically for the Piper Malibu aircraft. Parker also designed the standby vacuum pump joint that Piper used to attach the pump to the engine.
 
 
 6
 Vacuum pumps are used to drive certain flight instruments needed to pilot the airplane. They also provide the depressurized air that is used for de-icing the airplane. Seeking increased safety through redundance, Piper specified the use of a second standby vacuum pump if the primary pump happened to fail. Parker agreed to build the standby vacuum pump and to provide hardware to install it in the rear of the engine. Piper installed the standby vacuum pump on the engine. After consultation with TCM, Piper decided to use 70 inch-pounds of torque and an anaerobic adhesive known as Loctite 271 to attach both pumps to the engine. Parker was not involved in this decision.
 
 
 7
 The crash was investigated by the National Transportation Safety Board (NTSB), the Federal Aviation Administration (FAA) and representatives of the parties. Piper and Parker theorized that the Malibu's problem was caused when engine No. 3's connecting rod and bearing failed under the stress of heat and friction which then blocked the flow of oil to the engine, resulting in its failure. TCM theorized that defective design of the vacuum pump joint used to attach the standby vacuum pump to the aircraft's engine, inadequate installation instructions and inadequate installation caused an oil leak that deprived the engine of oil, resulting in its failure.
 
 III.
 
 8
 Parker asked the district court to enter judgment n.o.v. in its favor on grounds that it had no duty to provide installation instructions with the "component" it supplied to Piper. In reviewing this request for judgment n.o.v., the question for both the district court and us is whether there is sufficient evidence to sustain the jury verdict. Powell v. J.T. Posey Co., 766 F.2d 131, 133 (3d Cir.1985). In deciding it, we review the evidence in the light most favorable to the non-moving party. The district court's denial of the motion will be affirmed "[unless] the record is critically deficient of that minimum quantum of evidence from which the jury might reasonably afford relief." Link v. Mercedes-Benz of North America, Inc., 788 F.2d 918, 921 (3d Cir.1986) (quotation omitted).
 
 
 9
 Parker contends that it is a component manufacturer who has no duty under Pennsylvania law[5] to provide installation instructions for the standby vacuum pump it provided to Piper. It postures its case on appeal as one involving only defective warning. It states:
 
 
 10
 The primary issue at trial as to liability on the part of Parker Hannifin was whether Parker Hannifin had a duty to provide written instructions as to the method for installing the standby vacuum pump which it supplied to Piper.... While TCM also claimed that the design of the attaching components for the standby vacuum pump was defective, the apportioning of liability by the jury clearly indicates that the jury rejected this contention.
 
 
 11
 Brief for Appellant at 13 & n. 1. TCM responds that Parker is more than just a manufacturer of a component because this case also involves Parker's liability as manufacturer and designer of the defective joint used to attach the standby pump to the Piper engine.
 
 
 12
 In denying Parker's motion for judgment n.o.v., the district court stated:
 
 
 13
 Under existing law, [Parker] has an affirmative duty to provide every element necessary to make its product safe for intended use. Installation instructions are such an element if they are necessary to make the product safe. In this particular case, it was admitted by [Parker] that the standby vacuum pump was designed by it to be mounted onto an adapter plate, which was also designed by [Parker] and that [Parker] supplied the standby pump, the adapter plate, the gasket, four counter sunk screws and four cap screws as a unit. We cannot say as a matter of law that the designer of such a pump together with the accessories has no duty to provide instructions to the party to whom it sells it.
 
 
 14
 Opinion (Op.) at 3 (emphasis added).
 
 
 15
 We agree with TCM that this case involves more than Parker's failure to warn. The district court correctly instructed the jury that a product can be defective for strict liability purposes under Restatement (Second) of Torts § 402A (1965) either because of the way it was designed or because of the failure to provide instructions. In the interrogatories that were submitted to the jury, the district court did not pose separate questions to the jury about any defect based on a failure to warn or provide instructions on the one hand and, on the other, about the alleged defects in the design of the standby vacuum pump and joint. Since it did not submit separate interrogatories and Parker did not ask it to, we do not know whether the jury's verdict was based on a defective design or on Parker's lack of instructions. Therefore, we can consider Parker's argument that the issue of its failure to provide instructions should never have gone to the jury only in the context of its argument that the evidence was insufficient to uphold the jury verdict against it as the manufacturer of a defective product. Indeed, it is in that context that Parker makes its principal argument. It contends it is not the manufacturer of a product with respect to the Piper Malibu but rather the supplier of a component, and suppliers of components are not liable for furnishing defective products to the actual manufacturer under Pennsylvania law.[6]
 
 
 16
 The Supreme Court of Pennsylvania has held that a manufacturer of a product has a duty to provide those warnings or instructions necessary to make the product safe for its intended use. See Mackowick v. Westinghouse Elec. Corp., 525 Pa. 52, 575 A.2d 100, 102 (1990); Sherk v. Daisy-Heddon, 498 Pa. 594, 450 A.2d 615, 618 (1982) (plurality); Berkebile v. Brantly Helicopter Corp., 462 Pa. 83, 337 A.2d 893, 902-03 (1975); see also Restatement (Second) of Torts § 402A cmt. h. A product sold without such warnings or instructions is defective. See Mackowick, 575 A.2d at 102; Berkebile, 337 A.2d at 902. Parker relies on three recent decisions of the Supreme Court of Pennsylvania for the proposition that the manufacturer of a component does not have a duty to warn. See Jacobini v. V. & O. Press Co., 527 Pa. 32, 588 A.2d 476 (1991); Mackowick, 575 A.2d 100; Wenrick v. Schloemann-Siemag Aktiengesellschaft, 523 Pa. 1, 564 A.2d 1244 (1989). We do not believe these cases support that proposition as broadly as Parker states it. Furthermore, each of them is distinguishable from the present case.
 
 
 17
 In Wenrick, the decedent was crushed by an extrusion press while making repairs on the press. The decedent's estate sued Schloemann-Siemag Aktiengesellschaft (SMS AG), the manufacturer and designer of the press, and Eaton Corporation (Eaton), successor to Cutler-Hammer, Inc. (Cutler), the supplier and designer of the electrical control system of the press. The estate settled its claims with SMS AG but went to trial against Eaton on its defective design and negligent failure to warn claims. Wenrick, 564 A.2d at 1246. The estate claimed that the accident resulted from the improper location of an unguarded switch that controlled the press which was inadvertently triggered by another workman while he was descending a pair of steps that led to the service pit beneath the press where the decedent was making repairs. Id. The estate's expert testified that the absence of a guard to cover the actuating part of the switch was a defect and that Cutler had a duty to warn about the danger posed by the location of the unguarded switch above the steps. Id.
 
 
 18
 The Supreme Court of Pennsylvania held that the evidence did not support the trial court's conclusion that the electrical control system was defective. The evidence showed that all of the decisions regarding where the switch would be located were made by SMS AG. Id. at 1247. While Cutler participated in the design of the electrical control system of the press, it was not involved in the positioning of the switch. Information concerning the dimension or layout of the completed press was not necessary to the design of the electrical control system. The location of the unguarded switch on the steps, the alleged design defect which caused the accident resulted from a decision made by SMS AG alone and it was not "dictated by the electrical design supplied by [Cutler]." Id. at 1247.
 
 
 19
 In addition to holding that the electrical control system was not defective under a theory of strict liability, the court also considered whether Cutler was negligent in failing to warn of the danger presented by putting the unguarded switch above the steps in a place where it could be triggered inadvertently. Id. at 1247. The court held that Cutler assumed no duty to warn about another party's decision to put the switch in a dangerous place. Id. at 1248. The court explained: "All the decisions and actions whereby the danger was created--the type of switch (unguarded), its location, and the location of the service pit and its access steps--were the responsibility of SMS AG." Id. The Court stated: "[A]ppellants argument on this appeal, amount[s] to no more than an assertion that knowledge of a potential danger created by the acts of others gives rise to a duty to abate the danger." Id. (emphasis added).
 
 
 20
 Wenrick is distinguishable from the present case in several ways. First, there was no strict liability claim that the lack of warning concerning the location of the switch was a defect in itself. Second, the location of the switch in Wenrick was not dictated by the electrical design system supplied by the component manufacturer in that case. Id. at 1247; see Himes v. New Enter. Stone & Lime Co., 399 Pa.Super. 301, 582 A.2d 353, 358-59 (1990) (supplier of component not liable when alleged defect not dictated by design of component). Finally, Parker's design of the joint led to the use of the torque and Loctite that Parker's evidence tended to show caused the oil leak. Here again, contrary to Wenrick, "[a]ll the decisions and actions whereby the danger was created," Id. at 1248, were not made solely by Piper.
 
 
 21
 The potential danger associated with the standby vacuum pump joint was not created solely "by the acts of others." Id. Parker designed the standby vacuum pump and the attaching hardware or "joint." Parker designed the joint with knowledge that its function was to secure the standby vacuum pump to the engine and prevent the escape of pressurized oil. TCM's experts identified several defects in the design of the joint, including the use of countersunk screws and reliance on Loctite to bind parts that could not be inspected to confirm its use. Thus, Parker's design led to Piper's selection of the Loctite adhesive and depended on the proper use of that adhesive. Nevertheless, Parker gave Piper no installation instructions.
 
 
 22
 Under these circumstances, other parties' attempts to decide on proper materials and procedures for assembly, given the absence of appropriate instructions from Parker, do not relieve Parker from the consequences of a breach of its duty to provide adequate warning about the dangers of improper assembly and a means of avoiding them. Assembly, under Parker's design, required the use of countersunk screws of a particular size and the application of adhesive and torque to them. The jury had before it evidence that showed Parker did draft "preliminary" instructions for installation of the standby vacuum pump but then sent Piper a wrong set of instructions.
 
 
 23
 Parker's reliance on Jacobini and Mackowick is also misplaced. In Jacobini, the plaintiff sought damages for injuries he suffered when a power press he was operating expelled a die and materials being shaped by the die. Jacobini, 588 A.2d at 477. He sued the manufacturer of the power press, the builder of the die and Danly Machine Corporation (Danly), the manufacturer of the die set, a device that was sold to the builder of the die and then incorporated by it into the completed die.[7] The trial court held that the plaintiff's injuries were caused by his own error in aligning the tool holder rather than by any defects in the die or die set. Id. It also held that neither the die nor the die set was defectively made, i.e. unreasonably dangerous in the language of Restatement (Second) of Torts § 402A,[8] because it lacked an affixed warning against using the dies on presses that did not have barrier guards. Accordingly, judgment was entered for Danly. Id. at 477. Although the power press had been equipped with a barrier guard to prevent objects from being ejected therefrom and that barrier guard was removed sometime after the press was manufactured, the Superior Court reversed.
 
 
 24
 The Supreme Court of Pennsylvania reinstated the trial court's order directing a verdict in Danly's favor. It recognized in dicta the principle that "limits on a manufacturer's duty to warn are placed at issue where ... the manufacturer supplies a mere component of a product that is assembled by another party and dangers are associated with the use of the finished product." Id. at 478 (citing Wenrick, 564 A.2d 1244). It said "[t]his is particularly true where the component itself is not dangerous, and where the danger arises from the manner in which the component is utilized by the assembler of the final product, this being a matter over which the component manufacturer has no control." Id. at 479. The court, however, did not apply this principle to the case before it, holding instead that the evidence was insufficient to submit the plaintiff's failure to warn theory to the jury.
 
 
 25
 The dicta in Jacobini does not help Parker. Here, the danger of an oil leak was not wholly attributable to the way in which the standby vacuum pump was assembled by Piper in making the aircraft. Initially, the danger arose out of the design of the connecting joint that Parker supplied to Piper. Accordingly, the district court instructed the jury if it found either an improper design in the standby vacuum pump joint or a failure to give proper instructions by Parker that the product was defective.
 
 
 26
 Finally, in Mackowick, an electrician was severely burned while installing an electrical capacitor. The capacitor contained a warning that it should be grounded before it was handled because live, uninsulated fuses in the capacitor could cause severe shock and electrical burns. Mackowick, 575 A.2d at 101. The electrician was burned when he pointed a screwdriver into the capacitor and the current from the capacitor arced. The electrician sued Westinghouse, the manufacturer of the unit, alleging it provided inadequate warnings of the dangers from arcing that were inherent in the unit.
 
 
 27
 The Supreme Court of Pennsylvania held that "[a] warning of inherent dangers is sufficient if it adequately notifies the intended user of the unobvious dangers inherent in the product." Id. at 102 (emphasis in original). It concluded:
 
 
 28
 The danger to be warned against is the live, exposed electricity. Arcing is a principle of electricity and a propensity of exposed high voltage electrical power. Such principles are expected to be known by a skilled electrician. This product was intended to be used only by qualified electricians who would be aware of the dangers of arcing in such equipment.
 
 
 29
 Id. at 103 (footnote omitted).
 
 
 30
 The issue in Mackowick was not whether the manufacturer had a duty to warn, but whether the warning it gave was adequate. The court held the warning was adequate because the intended users, skilled electricians, knowing about the presence of live, uninsulated fuses, would be aware of the risk of arcing. Here, Parker not only provided no installation instructions for the standby vacuum pump but gave Piper wrong instructions for a different pump. In contrast to Mackowick, there was no evidence in this case that the Piper employees who did the installation, though professionals in aircraft maintenance, had "common knowledge" about the design defects in the joint Parker designed for assembling the standby vacuum pump into the aircraft.
 
 
 31
 In Wenrick, Jacobini and Mackowick, the component manufacturer had nothing to do with creating the risk involved. That is not the case here. Whatever relief from the duty to warn Pennsylvania now affords to suppliers of components, we predict the Supreme Court of Pennsylvania will not extend it to a supplier of a component who fails to give the manufacturer of the completed product warning or instruction about dangers inherent in the component's design that the manufacturer would not readily recognize. Accordingly, we will affirm the order of the district court denying Parker's motion for judgment n.o.v. on this ground. We will also affirm the district court's denial of Parker's motion for a new trial and its denial of TCM's motion for prejudgment interest.
 
 SUR PETITION FOR PANEL REHEARING
 
 32
 The petition for panel rehearing filed by appellant, Parker Hannifin, Airborne Division, in the above captioned matter having been submitted to the judges who participated in the decision of this court, and no judge who concurred in the decision having asked for rehearing, the petition for panel rehearing is denied.
 
 
 
 *
 Pursuant to Rule 12(a)
 
 
 [1]
 On TCM's cross-appeal, we hold the district court did not abuse its discretion in denying TCM's motion for prejudgment interest. See Peterson v. Crown Financial Corp., 661 F.2d 287, 293 (3d Cir.1981). TCM alternately asks this Court to remand to the district court for an award of delay damages under Pennsylvania Rule of Civil Procedure 238(a)(2)(i). Since TCM never raised a Rule 238 argument before the district court, it is waived and cannot be considered on appeal
 
 
 [2]
 Parker's other arguments are whether the district court erred in submitting the issue of causation to the jury; whether TCM established that it was a joint tortfeasor entitled to recover on a theory of contribution; whether the district court erred in denying Parker's alternate motion for a new trial; whether the district court erred in refusing to submit the issue of the pilot/owner's negligence to the jury; whether the district court erred in refusing to submit special interrogatories to the jury; whether the district court erred in denying Parker credit for settlements TCM obtained from other parties; and whether the district court erred in its evidentiary rulings concerning evidence of various experiments and tests offered by TCM, on Parker's subpoena duces tecum, Parker's expert and its testimony regarding the reasonableness of TCM's settlement. After carefully examining the record and the parties' contentions, we have concluded these other arguments lack merit
 
 
 [3]
 The question of the government's liability was not presented to the jury. Instead, the court found in favor of the United States and entered judgment for it and against Teledyne
 
 
 [4]
 TCM's motion to adjust the jury's apportionment of responsibility among the parties because of Piper's bankruptcy remains pending in the district court. The validity of that request to change the jury's verdict, or perhaps grant a new trial, because one of the responsible parties has now become a bankrupt, including the potential conflict between TCM's request for a reduction in its liability for contribution because of Piper's bankruptcy and Pennsylvania's version of the Uniform Contribution Among Tort-feasors Act, 42 Pa.Cons.Stat.Ann. §§ 8321-27 (1982 & Supp.1991), will, therefore, be for the district court in the first instance
 
 
 [5]
 Pennsylvania law controls the substantive determinations in this diversity action. The district court had subject matter jurisdiction over this action pursuant to 28 U.S.C.A. § 1332(a)(1) (West Supp.1992). We have appellate jurisdiction over the final orders of the district court under 28 U.S.C.A. § 1291 (West Supp.1992)
 
 
 [6]
 Strictly speaking, Parker's argument that it had no duty to warn because it supplied a component of a finished product goes to the court's instruction to the jury that Parker was subject to liability either for defective design or failure to warn
 That instruction was not objected to and thus Parker chose to raise its legal argument to this Court in terms of insufficiency. We recognize that Parker's insufficiency argument fails if there is either a design defect or violation of a duty to warn. Nevertheless, we go on to address Parker's legal argument in order to give the parties a full exposition of the result we reach.
 
 
 [7]
 A die set is the foundation to which a die is attached. A die contains the forms against which metals are pressed in a power press. Id. at 477
 
 
 [8]
 The Supreme Court of Pennsylvania follows the principles of section 402A of the Restatement (Second) of Torts and recognizes that "a manufacturer's failure to warn of latent dangers in the use or operation of a product can render a properly designed product unreasonably dangerous and defective for purposes of strict product liability." Jacobini, 588 A.2d at 478; see Sherk, 450 A.2d at 621. Pennsylvania's high court has held, however, that the term "unreasonably dangerous" "should not be used in framing the issues for the jury's consideration." Azzarello v. Black Bros. Co., 480 Pa. 547, 391 A.2d 1020, 1026 (1978). That issue is decided by the court before the case is submitted to the jury for a determination of whether the facts support the averments of the complaint. Id