

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-6-1994

# Nowak, et. al. v. Faberge, Intnat'l

Precedential or Non-Precedential:

Docket 92-7660

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"Nowak, et. al. v. Faberge, Intnat'l" (1994). *1994 Decisions.* Paper 72.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/72

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

No. 92-7660 & 93-7051


ALISON NOWAK, a minor, by and through
her parent and natural guardian LEO NOWAK;
AMY NOWAK, a minor by and through her parent
and natural guardian, LEO NOWAK;
ELIZABETH NOWAK, individually; LEO NOWAK, individually

v.

FABERGE USA INC., t/d/b/a/ AQUANET,
a/k/a Faberge INTERNATIONAL, a/k/a MARIMO INC.;
PRECISION VALVE CORPORATION

FABERGE U.S.A., INC.
t/d/b/a AQUA NET, a/k/a
FABERGE INTERNATIONAL,
a/k/a MARIMO, INC.,

Appellants in 92-7660.

Faberge U.S.A., Inc.,

Appellant in 93-7051.


On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 90-01919)


Argued: July 2, 1993

Before: BECKER, ALITO and ROTH, <u>Circuit</u> <u>Judges</u>

(Opinion Filed July 6, 1994)


Michael J. Cefalo, Esquire (Argued)

Lesa S. Gelb, Esquire
Kurt J. Kwak, Esquire
Cefalo & Associates
309 Wyoming Avenue
West Pittston, PA 18643
        Attorneys for Appellees

Ernest J. Bernabei, III, Esquire
Harvey, Pennington, Herting & Renneisen, Ltd.
1835 Market Street
Eleven Penn Center, 29th Floor
Philadelphia, PA 19103

Patrick T. Ryan, Esquire (Argued)
Alfred W. Putnam, Jr., Esquire
Lawrence A. Nathanson, Esquire
Drinker, Biddle & Reath
1345 Chestnut Streets
Philadelphia Natinal Bank Building
Philadelphia, PA 19107
        Attorneys for Appellant

OPINION OF THE COURT

ROTH, <u>Circuit Judge</u>:

This case arises from a tragic accident involving appellant Faberge's hair spray product, Aqua Net. The appellee Alison Nowak punctured an aerosol can of Aqua Net near a flame and suffered severe injuries from the resulting fire. The jury found that a defective valve system and inadequate warnings on the hair spray can proximately caused Alison's injuries. She was awarded damages of $1.5 million.

Appellant Faberge contends that the district court failed to make a ruling as a matter of law that the product was

defective. Under Pennsylvania tort law, the district court was required on the basis of the averments made by the plaintiff to determine whether or not Faberge's product was defective, both as to the valve system and as to the warnings on the can, prior to sending the case to the jury for its deliberations on whether the facts in evidence supported these averments. The district court did not explicitly make the findings as to defect. However, we conclude that under Pennsylvania law the district court could implicitly make these determinations by the fact that it sent the case to the jury. Appellant Faberge bore the burden of requesting an explicit ruling on this issue if it desired one.

The parties do not contest the main facts. Faberge manufactures Aqua Net hair spray worldwide in both aerosol and non-aerosol pump spray containers. Aqua Net contains a mixture of butane or propane, as the aerosol propellant, and alcohol, as a solvent for the propellant and the hair-holding agent. Alcohol is flammable and both propane and butane are extremely flammable. Aerosol cans of Aqua Net carry a warning on the back stating, among other things, "Do not puncture" and "Do not use near fire or flame."

On April 3, 1989, Alison Nowak, a fourteen-year-old girl, tried to spray her hair with a newly-purchased aerosol can of Aqua Net. The spray valve would not work properly. Alison decided to cut open the can with a can opener. She thought she could then pour the contents into an empty pump bottle of Aqua Net which had a working spray mechanism. Alison was standing in

3

the kitchen near a gas stove when she punctured the can.  A cloud of hair spray gushed from the can and the stove's pilot light ignited the spray into a ball of flame.  Alison suffered severe, permanently disfiguring burns over 20% of her body.

Alison, along with her parents and her twin sister, filed suit against Faberge.  They claimed that Alison's injuries had three causes:  a manufacturing defect in the nozzle valve of the aerosol can, inadequate warnings on the can, and a defect in the design of the hair spray because it included a flammable solvent and propellant.  The Nowaks also filed a separate suit against Precision Valve Corporation which had designed, manufactured, and sold the valve mechanism used on the can.  The two lawsuits were consolidated and tried together.  At trial the district court granted Precision Valve's motion for a directed verdict because plaintiffs had not demonstrated that the valve was defective at the time it left Precision Valve's control.  The district court also directed verdicts against Alison's parents and sister on their claims against Faberge.

At the conclusion of the presentation of evidence, the district court submitted the case to the jury on special interrogatories:  1) Was the valve system in the product defective when it was distributed for sale by the defendant, Faberge?  2) Was the product defective because it contained a flammable solvent and propellant?  3) Was the product defective because it did not contain adequate warnings?  The jury answered "No" to the second question, but it answered "Yes" to the first and third questions, finding further that these particular

4

defects were each a proximate cause of plaintiff's injuries.  The jury awarded $1.5 million in damages to Alison.  On November 13, 1992, the district court denied Faberge's motions for judgment n.o.v. and for a new trial.  This appeal followed.

The district court's jurisdiction over this case rested on 28 U.S.C. § 1228.  This Court's jurisdiction arises from 28 U.S.C. § 1291.   The parties agree that Pennsylvania law governs this case.  Federal courts sitting in diversity "must apply the substantive law of the state whose laws govern the action." Robertson v. Allied Signal, Inc., 914 F.2d 360, 378 (3d Cir. 1990) (citing Erie R.R. v. Tompkins, 304 U.S. 64 (1938)).

This Court's review of the district court's decision to submit the issues of product defect and causation to the jury is plenary.

Under Pennsylvania law, whether a product is defective under the facts alleged by the plaintiff is initially a question of law to be answered by the trial judge.  Mackowick v. Westinghouse Elec. Corp., 575 A.2d 100, 102 (Pa. 1990).  The supplier of a product is the guarantor of its safety.  A product is considered to be defective "where the product left the supplier's control lacking any element necessary to make it safe for its intended use or possessing any feature that renders it unsafe for the intended use."  Azzarello v. Black Bros. Co., 391 A.2d 1020, 1027 (Pa. 1978).  The determination of whether a product is defective under Pennsylvania law is a two-stage inquiry.  Id. at 1025-26; Griggs v. BIC, 981 F.2d 1429, 1432 (3d

5

Cir. 1992). Initially, the question of whether a product is defective, given the facts as alleged by the plaintiff, is a question of law to be answered by the trial judge. If the judge determines as a matter of law that Pennsylvania's social policy supports placing the risk of loss on the manufacturer in the situation alleged by the plaintiff, then the case goes to the jury for a determination as to whether the facts alleged by the plaintiff are true. The Pennsylvania Supreme Court has stated this proposition clearly:

> Should an ill-conceived design which exposes the user to the risk of harm entitle one injured by the product to recover? . . . [This is a question] of law and [its] resolution depends upon social policy. . . . It is a judicial function to decide whether, under plaintiff's averment of the facts, recovery would be justified; and only after the judicial determination is made is the case submitted to the jury to determine whether the facts of the case support the averments of the complaint.

Azzarello, 391 A.2d at 1025-26.

Under Pennsylvania strict liability law, a defect may be in the warnings given for the use of the product as well as in the design of that product. A product can be held to be defective "if it is distributed without sufficient warnings to notify the ultimate user of the dangers inherent in the product." Mackowick, 575 A.2d at 102. In Mackowick, the Pennsylvania Supreme Court reaffirmed Azzarello, explicitly holding that the determination that a product is defective because of inadequate warnings is initially a question of law to be answered by the

6

trial judge.  Id.  See also Mazur v. Merck & Co., 964 F.2d 1348, 1366 (3d Cir.), cert. denied, 113 S. Ct. 463 (1992).

Our review of the record in this case demonstrates that the trial judge did not make an explicit determination, prior to sending the case to the jury, that Faberge's product was defective, either as to the spray mechanism or as to the warnings on the can.  The Nowaks argue that the judge implicitly made the necessary threshold legal finding in three ways:  by sending the case to the jury, by denying Faberge's motion for a directed verdict, and by ruling against one of Faberge's motions in limine that challenged the Nowaks' ability to present evidence on the inadequacy of the warning.  The Nowaks also argue that Faberge failed to request a specific ruling by the judge that its product was defective.  Based on our reading of Pennsylvania law and our review of the record, these arguments are valid.

Faberge asserts that the Azzarello threshold determination by the trial court should be made explicitly.  We agree that this is desirable.  Given the many complex and fact-based considerations involved, requiring an explicit ruling by trial courts on this often difficult question of social policy would increase the instructive value of the holding for other courts, for potential plaintiffs, and for manufacturers who seek guidance from the courts' products liability decisions.  Explicit rulings would also improve the clarity of the trial court record for purposes of appellate review.'  However, the Pennsylvania

---

'See e.g. Childers v. Joseph, 842 F.2d 689, 697 (3d Cir. 1988) (remanding for development of the record as to the district

7

Superior Court, sitting in banc in review of a strict liability case, has held that the Azzarello threshold determination can be made implicitly:

> Nothing in Azzarello precludes a manufacturer or supplier, by appropriate motion, from asking the trial court to make explicit its ruling on the threshold determination of social policy that Azzarello requires. In the absence of such a motion, it will be presumed that the court, by permitting the case to go to the jury, resolved the threshold determination against the defendant.

Dambacher by Dambacher v. Mallis, 485 A.2d 408, 423 n.6 (Pa. Super. 1984) (in banc), appeal dismissed, 500 A.2d 428 (Pa. 1985). In another recent Pennsylvania Superior Court case, also reviewing a trial court's decision in a strict liability action, the court noted:

> [T]he record below contains no indication that such an analysis was undertaken by the lower court. While our prior cases have not explicitly required as of yet an on-the-record analysis, or even a reference that a risk-utility analysis was made, we note that either would facilitate an appellate court's analysis.

Marshall v. Philadelphia Tramrail, 626 A.2d 620, 625 n.2 (Pa. Super. 1993).

This Court gives "due regard" to the decisions of Pennsylvania's intermediate appellate courts as "indicia of how the state's highest court would decide a matter." Ciccarelli v. Carey Canadian Mines, Ltd., 757 F.2d 548, 553 n.3 (3d Cir. 1985).

---

court's finding concerning "unreasonable dangerousness."). See also Hon v. Stroh Brewery Co., 835 F.2d 510, 514 (3d Cir. 1987); Fravel v. Suzuki Motor Co., 486 A.2d 498, 502 n.3 (Pa. Super. 1984).

Based on the Pennsylvania Superior Court's statements in Dambacher and Marshall and our review of the record here, we conclude that the district court, by sending the case to the jury, implicitly made the necessary threshold ruling required under Azzarello.

Given Dambacher, we also hold that, if Faberge had desired an explicit ruling on defect, it bore the burden of requesting such a determination by the trial judge.  Our examination of the record here has uncovered no such request.  We note that a federal district court in this circuit, in a strict liability case applying Pennsylvania law, has held, in response to a motion by the defendant requesting a specific threshold ruling under Azzarello, that:  "If a request is made by a party, the trial judge should be required to articulate the reasons for his/her decision on the question of 'social policy' . . .."  Shetterly v. Crown Controls Corp., 719 F. Supp. 385, 388 (W.D. Pa. 1989) (citing Dambacher, 485 A.2d at 423 n.6).

We once again urge that implicit rulings not be utilized.  Indeed, we have previously criticized a district court for making the determination that a product was defective in the form of an evidentiary ruling.  We noted in that case that:

> We are puzzled by the district court's decision to make this legal determination in the posture of an evidentiary ruling.  The legal determination of whether a product is "unreasonably dangerous" under Pennsylvania law is tantamount to -- and should more appropriately have been -- a ruling made upon motion for summary judgment or a directed verdict.

Childers v. Joseph, 842 F.2d 689, 696 n.7 (3d Cir. 1988).

While the Pennsylvania courts have so far held that the threshold social policy ruling required by Azzarello can be made implicitly, appellate review benefits from a clear and explicit ruling by the trial court.  The threshold decision concerning whether a product is defective as a matter of law can be difficult to make:  "In making this determination, the judge acts as a combination social philosopher and risk-utility analyst."  Ellis v. Chicago Bridge & Iron Co., 545 A.2d 906 (Pa. Super. 1988).  Courts and commentators have suggested several factors to be considered in making this complex determination.  See Dambacher, 485 A.2d at 423 n.5.[2]  See also Azzarello, 391 A.2d at

---

[2] Dambacher cites two lists of factors to be considered when making the social policy decision required by Azzarello.  The first, adopted by the California Supreme Court, includes: the gravity of the danger posed by the challenged design; the likelihood that such a danger would occur; the mechanical feasibility of a safer design; the financial cost of a safer design; and the adverse consequences to the product and to the consumer that would result from a safer design.  See Barker v. Lull Eng'g Co., 573 P.2d 443, 455 (Cal. 1978).  The second, drafted by Dean Wade, includes:

> (1)  The usefulness and desirability of the product--its utility to the user and to the public as a whole.
> (2)  The safety aspects of the product--the likelihood that it will cause injury, and the probable seriousness of the injury.
> (3)  The availability of a substitute product which would meet the same need and not be as unsafe.
> (4)  The manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility.
> (5)  The user's ability to avoid danger by the exercise of care in the use of the product.
> (6)  The user's anticipated awareness of the dangers inherent in the product and their

1025-26; Lobianco v. Property Protection, Inc., 437 A.2d 417, 424-25 (Pa. Super. 1981). We reiterate that a specific ruling by the district court on these factors, whether the claimed defect be of design or of inadequate warning, would facilitate our review.

For the reasons stated above, however, we find that the district court implicitly made the threshold risk-utility determination that appellant's product was defective under the facts, as alleged, by sending this case to the jury. We conclude that this is a sufficient determination under Pennsylvania law. We will, therefore, affirm the verdict and judgment of the district court.[3]

---

avoidability, because of general public knowledge of the obvious condition of the product, or of the existence of suitable warnings and instructions.
(7) The feasibility, on the part of the manufacturer, of spreading the loss [by] setting the price of the product or carrying liability insurance.

John W. Wade, On the Nature of Strict Tort Liability for Products, 44 Miss. L.J. 825, 837-38 (1973) (footnote omitted).
[3]We have reviewed Faberge's other claims of error and find them to be without merit.