David WEINER, Appellant,

v.

AMERICAN HONDA MOTOR CO., INC., Honda Motor Co., Ltd. and Metro Imports, Inc., t/a Metro Acura, Appellee.

Superior Court of Pennsylvania.

Argued June 2, 1998.
Filed Sept. 17, 1998.

Joseph R. McFadden, Jr., Media, for appellant.

Robert St. Leger Goggin, Philadelphia, for appellees.

Before KELLY, J., and CERCONE, President Judge Emeritus, and MONTEMURO*, J.

MONTEMURO, Judge:

Appellant, David Weiner, appeals from the grant of summary judgment in favor of Appellees American Honda Motor Co., Inc., Honda Motor Co., Ltd., and Metro Imports, Inc.,[1] in a product liability action alleging defective design of an automobile and failure to warn of the dangers associated with transporting certain cargo. For the reasons set forth below, we affirm.

This product liability action arises from a one-vehicle accident that occurred on July 1, 1992 when Appellant, who was driving his girlfriend's 1992 two-door Acura Integra hatchback, drove through a stop sign and head-on into a guardrail near an intersection in Wallingford, Philadelphia County. At the time of the accident, Appellant and his girlfriend were transporting a 54 inch, 180 pound canister of pressurized nitrous oxide gas they had purchased from a local commercial gas distributor.[2] The Acura hatchback is a pas-

---

* Retired Justice assigned to Superior Court.

1. Appellees include the manufacturer, distributor, and leasing agent of the 1992 Acura Integra.

2. Appellant and his friends previously purchased canisters of nitrous oxide and inflated balloons with the gas for sale at rock concerts; apparently the ingestion of this gas produces a "high."

senger vehicle equipped with folding rear seats for expansion of the rear cargo compartment. Because the gas canister was four and a half feet long, Appellant found it necessary to fold these rear seats to accommodate its length and facilitate its transport. With both rear seats folded down, the nitrous oxide canister was placed in the rear of the vehicle, lying on its side behind driver's seat, parallel with the side of the vehicle.

When the car struck the guardrail, the unrestrained canister slid forward into the back of Appellant's seat, pinning him between the seat and the shoulder harness. Appellant claims numerous injuries from the impact of the canister, including fractured ribs, closed head injury, visual field deficits, and lung damage. On June 15, 1994, Appellant filed a complaint against Appellees based on theories of strict liability and negligence. Appellant later withdrew his negligence claim, and proceeded on the products liability theories of defective design and failure to warn, claiming that the Acura should have been equipped with devices to prevent the cargo from moving inside the vehicle as well as conspicuous warnings inside the vehicle limiting the size and weight of transportable cargo and the risks of such transport.

On July 31, 1997, Appellees filed a motion for summary judgment which was granted following oral argument on September 26, 1997. This timely appeal follows challenging the trial court's entry of summary judgment.

■ Our standard of review in cases of summary judgment is well-settled. Summary judgment is proper when, viewing the record in the light most favorable to the nonmoving party, the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits demonstrate that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1035.2, 42 Pa. C.S.A. Summary judgment may only be granted in those cases that are clear and free from doubt, and this Court will not reverse a trial court's entry of summary judgment absent an abuse of discretion or error of law. *Sebelin v. Yamaha Motor Corp., USA*, 705 A.2d 904, 906–07 (Pa.Super.1998).

■ The Restatement (Second) of Torts § 402A,[3] adopted as the law of this Commonwealth in *Webb v. Zern*, 422 Pa. 424, 220 A.2d 853 (1966), governs all claims of products liability and allows recovery where a product in "a defective condition unreasonably dangerous to the consumer or user" causes harm to the plaintiff. Restatement (Second) of Torts, § 402A (1). Success on such a claim requires the plaintiff to prove that (1) the product was defective, and (2) the defect was the proximate cause of the harm. *Spino v. John S. Tilley Ladder Co.*, 548 Pa. 286, 293, 696 A.2d 1169, 1172 (1997). There are three types of defective conditions which may give rise to strict liability: manufacturing defect, design defect, and failure to warn defect. *Phillips v. A–Best Products, Co.*, 542 Pa. 124, 131, 665 A.2d 1167, 1170 (1995). Here, Appellant alleges that the Acura was unreasonably dangerous based upon a design defect in that the vehicle lacked proper safety devices, and that Appellees failed to warn of the risks to front seat passengers upon impact when transporting cargo of such a size as the gas canister or to impose restrictions on the weight and size of permissible cargo.

■ The threshold inquiry in all products liability cases is whether there is a defect which rendered the product unreasonably dangerous. *Dambacher by Dambacher v. Mallis*, 336 Pa.Super. 22, 485 A.2d 408, 422

---

3. Section 402A provides:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property if

  (a) the seller is engaged in the business of selling such a product, and

  (b) it is expected to and does reach the user or consumer without a substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

  (a) the seller has exercised all possible care in the preparation and sale of his product, and

  (b) the user or consumer had not bought the product from or entered into any contractual relation with the seller.

Restatement (Second) of Torts, § 402A (1965).

(1984). A product is defective when it is not safe for its intended use, i.e., the product left the supplier's control lacking any element necessary to make it safe for its intended use. *Id.* 485 A.2d at 426. *See also Kupetz v. Deere & Co.*, 435 Pa.Super. 16, 644 A.2d 1213, 1218 (1994). Court control of jury action is more extensive in products liability cases than in the ordinary negligence action. *Dambacher*, 485 A.2d at 425 (citation omitted). In *Azzarello v. Black Bros. Co., Inc.*, 480 Pa. 547, 391 A.2d 1020 (1978), our Supreme Court held that the question of whether a product is "unreasonably dangerous" is a question of law to be decided by the trial court, the resolution of which depends upon considerations of social policy, *id.* at 547, 391 A.2d at 1026, including weighing factors such as "the gravity of the danger posed by the challenged design; the likelihood that such danger would occur; the mechanical feasibility of a safer design; and the adverse consequences to the product and to the consumer that would result from a safer design." *Riley v. Warren Mfg., Inc.*, 455 Pa.Super. 384, 688 A.2d 221, 225 (1997).

Accordingly, in cases such as this, it is the function of the court to determine first whether the imposition of strict liability would be justified under the plaintiff's version of the facts. Only after this determination is made will the case be submitted to the jury to decide whether the facts of the case support the averments of the complaint. *Azzarello*, 480 Pa. at 558, 391 A.2d at 1026. It is not the purpose of strict liability under § 402A to impose absolute liability on the product's manufacturer or supplier since those entities are guarantors, not insurers, of the product's safety, *Davis v. Berwind*, 547 Pa. 260, 267, 690 A.2d 186, 190 (1997), meaning that the manufacturer must at least provide a product which is safe for its intended use. *Azzarello*, 480 Pa. at 559, 391 A.2d at 1027. As such, there are "certain products [and] certain risks that as a matter of law, or social policy, cannot support the imposition of strict liability." *Dambacher*, 485 A.2d at 422. "Indeed, the term 'unreasonably dangerous' was included in § 402A specifically to obviate any contention that a manufacturer of a product with inherent possibilities of harm would become automatically responsible for every harm that could conceivably happen from the use of the product." *Riley*, 688 A.2d at 228.

In the instant case, Appellant first contends that the Acura was defectively designed and unreasonably dangerous since it lacked proper safety devices which would either permit the front seats to withstand the impact of shifting cargo upon collision or otherwise anchor or restrain the cargo inside the vehicle. Appellant essentially claims that because the Acura was advertised as a vehicle able to carry cargo without restraints or restriction as to weight and size, Appellees should be held strictly liable for failing to protect Appellant from injuries he sustained from the impact of the gas canister. The trial court disagreed and found that, under an *Azzarello* analysis, the imposition of strict liability was not justified since the transportation of an industrial, commercial gas canister was not an intended use of the Acura for which the manufacturer was required to provide safety devices. The court reasoned that "it defies logic to consider [the transportation of] a 180 pound industrial tank of pressurized gas is an intended use for a two door hatchback passenger vehicle.... If plaintiff's counsel were to have his way, transporting any cargo that could fit into the back of the vehicle ... would be considered an intended use merely because the back seats folded down to accommodate it." (Trial Ct. Op. at 7). We agree.

Although it is true that the lack of proper safety devices can constitute a design defect under § 402A, "this rule should only apply to allow recovery where the absence of the safety device caused an accidental injury which was of the type that could be expected from *normal use* of the product;" a manufacturer is entitled to believe that the product will be used in its usual manner, and "need not be the insurer for the extraordinary risks an operator might choose to take." *Bartkewich v. Billinger*, 432 Pa. 351, 356, 247 A.2d 603, 605–06 (1968) (emphasis added). Our law is clear that "liability may be imposed only on proof that the product lacked an element necessary to make it safe for its *intended* use." *Dambacher*, 485 A.2d at 424

(emphasis added). Indeed, "any motorized vehicle carries certain substantial risks to the user, and such products are not unreasonably dangerous merely because they may be involved in accidents or because an operator may be injured during their use." *Riley*, 688 A.2d at 229.

■ Here, it is undisputed that the Acura was equipped with folding rear seats to allow greater flexibility in its cargo-carrying capability. Although Appellant claims that Appellees should be held responsible for failing to provide safety devices and limitations on the size and type of cargo that could be carried in the Acura, Appellant cites favorably to the affidavit of Appellees' chief engineer who stated that Acura was designed and manufactured as a sporty passenger car and the enlarged luggage area of the Acura was "intended to be used for items that passengers normally and reasonably would use in connection with driving or riding in this automobile.... This car was designed, for example, to transport items in the luggage compartment such as suitcases, groceries, golf clubs, brief cases, shopping bags, books, sports equipment, and other items of a similar nature." (Appellant's Brief at 16). It is clear that the intended use of the Acura's cargo compartment was not for the transport of commercial or industrial items or other items similar to the instant 4½ foot, 180 pound canister.

There are certain products and risks against which the law of products liability is not meant to protect the user and, in those situations, the trial court should rule as a matter of law that strict liability does not apply. *Dambacher*, 485 A.2d at 422. This is such a case. To find that the Acura was defective and unreasonably dangerous and hold Appellees strictly liable for all injuries sustained from shifting cargo upon impact simply because such cargo was capable of fitting inside the vehicle would run contrary to the purposes of § 402A, since it would effectively place Appellees in the position of being an insurer of safety with no consideration given to the intended use of the vehicle and its cargo area. *See Riley*, 688 A.2d at 229–30 (affirming directed verdict in favor of manufacturer in design defect case where

trial court found, under *Azzarello* social policy analysis, that the bulk feed trailer was not unreasonably dangerous since there was no evidence that it was unsafe for its intended use. Farmer's grandson who lost fingers in trailer after placing hand in its discharge tube was not intended user using machine for its intended use; there was no reason to place hand in tube while machine engaged, and the trailer was a sophisticated piece of machinery whose normal/intended use was the hauling of bulk feed to farms by "an educated group of industrial consumers," not children). As a result, we find no abuse of discretion or error of law in either the trial court's analysis under *Azzarello* or its subsequent grant of summary judgment as to Appellant's design defect claim.

Next, Appellant complains that the court erroneously granted summary judgment on his claim that Appellees failed to adequately warn of the risks and dangers in the use of the 1992 Acura. Appellant claims that the Acura was defective and unreasonably dangerous because "Appellees failed to provide sufficient warnings [in the *interior* of the cargo compartment] that the back of the passenger seats would not provide protection nor warned that the vehicle should not be used as a cargo carrier which would prohibit the operator of the vehicle from carrying objects which could enter the driver compartment and injure the occupants of the vehicle." (Appellant's Brief at 19–20)(emphasis added).

■ The claim of "failure to warn" is a subset of defective design in which "a 'defect' is supposed to exist because the user was not adequately instructed on how to use the product as the product was designed." *Dambacher*, 485 A.2d at 426. To succeed on a claim of inadequate or lack of warning, a plaintiff must prove that the lack of warning rendered the product unreasonably dangerous and that it was the proximate cause of the injury. *O'Neill v. Checker Motors Corp.*, 389 Pa.Super. 430, 567 A.2d 680, 682 (1989). Failure to establish either of these two elements bars plaintiff's recovery as a matter of law. *Phillips*, 542 Pa. at 131, 665 A.2d at 1171.

Our Supreme Court has held that "[t]he duty to warn does not require the manufacturer to educate a neophyte in the principles of the product. A warning of inherent dangers is sufficient if it adequately notifies the intended user of the *unobvious* dangers inherent in the product." *Mackowick v. Westinghouse Elec. Corp.*, 525 Pa. 52, 56, 575 A.2d 100, 102 (1990) (emphasis original). In order to establish causation for failure to warn, it must be demonstrated that the user of the product would have avoided the risk had he or she been warned of it by the seller/manufacturer. *Phillips*, 542 Pa. at 131, 665 A.2d at 1171. The determination of whether a warning is adequate and whether a product is "defective" due to inadequate warnings is a question of law to be decided by the trial court judge who must determine, under an *Azzarello* social policy analysis, whether the imposition of strict liability would be justified under the facts of the case. *Id.* at 56, 575 A.2d at 102–03.

Here, the trial court concluded as a matter of law that the Acura was not defective since Appellees had no duty to warn of the obvious danger in transporting such unintended cargo as the large gas canister. The trial court reasoned that if Appellees were required to warn against the dangers of transporting any conceivable, though unintended, type of cargo in the Acura, "the number of warnings that would accompany [the] product would be so numerous that it would diminish the value of the warnings in toto." (Trial Ct. Op. at 8–9). We agree.

Comment i to § 402A states that to require warnings, "[t]he article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." *Jordon by Jordon v. K–Mart Corp.*, 417 Pa.Super. 186, 611 A.2d 1328, 1331 (1992) (citation omitted). Appellant testified in a deposition that even before he left the commercial gas distributor, there was some concern that the canister would roll and damage the vehicle's upholstery. (Appellant's deposition, 12/20/95 at 114–15). Indeed, Appellant was aware that after he left the distributor, but well before his colli-

sion with the guardrail, the canister rolled and crushed a styrofoam cooler located in the same cargo area. (*Id.* at 117–18). Also, the owner's manual of the Acura, which Appellant admittedly never read or consulted before transporting the large canister, (*id.* at 66, 575 A.2d 100), contained repeated warnings that loose items could become dangerous projectiles and injure someone during a collision or sudden stop. (Owner's manual at 8, 9, 27, 28, 29 appended as Exh. G to Appellees' Motion for Summary Judgment).

We cannot say that the danger of transporting an unrestrained, 4½ foot long, 180 pound canister was either obscure or beyond the contemplation of an ordinary user, especially a user who had already witnessed first hand before the collision occurred the danger involved in transporting this type of shifting cargo. It is clear that even with the knowledge that the unrestrained canister could shift during transport, posing a threat to himself and his passenger, Appellant chose not to avoid it. *See Phillips*, 542 Pa. at 132, 665 A.2d at 1171 (holding plaintiff's strict liability/failure-to-warn cause of action did not lie as a matter of law since plaintiff failed to establish that defendant's alleged failure to warn about dangers of product caused the injury; plaintiff had actual knowledge of the risk about which the missing warning would have cautioned). It would defy logic to conclude that the risks involved in transporting, unrestrained, a large heavy object are so unclear as to require a warning in the absence of which the manufacturer must be held strictly liable. Thus, in the instant matter, the absence of warnings on its interior does not make the vehicle unreasonably dangerous so as to hold the manufacturer strictly liable for Appellant's injuries. *See Jordan*, 611 A.2d at 1331–32 (affirming grant of summary judgment in favor of supplier of toboggan-like sled and against minor in case alleging design defects and failure to warn that sleds are hard to steer and stop, and should not be used in areas where many stationary obstacles are present. Sledding involves inherent dangers which an ordinary 10 year old is capable of recognizing and appreciating as part of the risk of sledding; minor was

knowledgeable in art of sledding and had previously steered sled successfully).

Summary judgment affirmed.