## Schindler v. Stuart Pharmaceutical Co.

*Lee B. Balefsky,* for plantiffs.
*Gregory A. Bolzle,* for defendant.

NEW, A., *J.,* February 15, 2000—

## PROCEDURAL HISTORY

On December 15, 1994, plaintiffs, Dorothy and Robert Schindler, filed a civil complaint initiating this action against defendants, Sofamor Inc., Sofamor Danek Group Inc., Somepic Technologies[1] and Stuart Pharmaceutical Company. The complaint sought recovery for injuries sustained when a spinal fixation device surgically implanted in Dorothy Schindler's spine broke. Plaintiffs claimed the rod, which was manufactured by

---

1. The docket reveals that Somepic Technologies, a French corporation, was never served with the complaint.

Sofamor and distributed by Stuart Medical, was defectively designed.[2]

On October 20, 1998, the Honorable John W. Herron granted summary judgment in favor of the Sofamor defendants. A jury trial before the Honorable Arnold L. New commenced against the remaining defendant, Stuart Medical, on December 4, 1998. On December 11, 1998, the jury returned a verdict in favor of plaintiffs in the amount of $1,585,000.

On December 21, 1998, Stuart Medical filed timely post-trial motions requesting judgment n.o.v. or, in the alternative, a new trial, based on numerous alleged errors committed by this court during trial. Oral argument took place on July 8, 1999. For the following reasons, judgment n.o.v. must be entered in favor of defendant Stuart Medical.

## FACTUAL HISTORY

In January 1963, plaintiff, Dorothy Schindler, was diagnosed with scoliosis, which is a curvature of the spine. Notes of Testimony, p. 1.47. Between 1963 and 1988, Mrs. Schindler was treated by a chiropractor. N.T., pp. 1.48-1.49. In 1988, Mrs. Schindler began to experience intense leg and back pain and went to see Richard A. Balderston M.D., an orthopedic surgeon. N.T., p. 1.51. Dr. Balderston informed Mrs. Schindler that her spine had curved to 74 degrees and that she would need back surgery in order to improve. N.T., p. 1.52.

In November 1988, Mrs. Schindler underwent posterior and anterior fusion surgery. N.T., p. 1.53. A Cotrel-Dubousset spinal fixation device was placed in Mrs.

---

2. The complaint set forth causes of action for products liability, negligence and breach of express/implied warranties. At trial, all claims except design defect were voluntarily dismissed by plaintiffs. N.T., p. 3.13.

Schindler's spine. N.T., p. 1.54. The device consists of a series of hooks and rods which are used to stabilize and align the spine until bone fusion occurs. N.T., p. 3.46. In January 1989, an x-ray revealed that one of the hooks implanted in Mrs. Schindler's spine had not set properly. N.T., p. 1.56. Surgery was performed to repair the hook. N.T., p. 1.56. After the surgeries, Mrs. Schindler's curve was reduced by 30 degrees and she became asymptomatic. N.T., pp. 1.61, 1.119-1.200.

Between 1989 and 1993, Mrs. Schindler testified that she felt good and that her activities resumed with no problems. N.T., pp. 1.56-1.61. In February 1993, while attending an exhibition baseball game, Mrs. Schindler experienced sharp lower back pain and was unable to walk out of the stadium. N.T., p. 1.64. After that date, Mrs. Schindler began to experience pain and numbness in her legs and back. N.T., p. 1.65.

Mrs. Schindler saw Dr. Balderston again in July 1993. N.T., p. 1.69. An examination revealed that Mrs. Schindler's spine had not fused at the T11-T12 and T8-T9 sites. N.T., p. 1.170. At this point of nonfusion, an x-ray revealed that one of the CD rods implanted in Mrs. Schindler's spine had fractured. N.T., p. 1.73. Dr. Balderston informed Mrs. Schindler that she would have to undergo surgery to repair the rod. N.T., p. 1.73. Surgery was performed in September 1993. N.T., p. 1.76. The CD rods were removed and three new rods were placed in Mrs. Schindler's back. N.T., p. 1.76.

On December 15, 1994, plaintiffs initiated this lawsuit, asserting products liability claims. Plaintiffs claimed that the knurled surface of the CD rod was a design defect, which caused the rod to prematurely fracture. In its post-trial motions, defendant Stuart Medical argued this court should have ruled that the CD rod was not unrea-

sonably dangerous as a matter of law. Defendant argues that such error requires this court to enter judgment n.o.v.[3] For the following reasons, this court agrees.

## LEGAL ANALYSIS

A judgment n.o.v. may be granted only in clear cases where the facts are such that "no two reasonable persons can fail to agree that the verdict is improper." *Lira v. Albert Einstein Medical Center,* 384 Pa. Super. 503, 508, 559 A.2d 550, 552 (1989). When determining whether to grant a judgment n.o.v., the trial court must consider all the evidence, along with all reasonable inferences which may be drawn therefrom, in the light most favorable to the verdict winner. *Id.* Defendant, Stuart Medical, claims this court erred in failing to rule as a matter of law that the CD rod was not unreasonably dangerous.

In order to prevail on a products liability claim, a plaintiff must prove that the product is defective and that the defect was the proximate cause of the plaintiff's harm. *Weiner v. American Honda Motor Co. Inc.,* 718 A.2d 305, 307 (Pa. Super. 1998). The threshold inquiry in any products liability action is whether a defect existed. *Id.* There are three types of defective conditions which may give rise to a cause of action: manufacturing defect, design defect and failure to warn defect. *Id.* In the present case, plaintiffs alleged that the CD rod was defectively designed.

A product contains a design defect where the design of the product results in an "unreasonably dangerous" product. *Riley v. Warren Manufacturing Inc.,* 455 Pa. Super. 384, 390, 688 A.2d 221, 224 (1997). A product is "unreasonably dangerous" when it is not safe for its in-

---

3. Defendant also raises several evidentiary issues in its post-trial motions. These issues, however, will not be discussed, as this court finds the CD rod was not unreasonably dangerous as a matter of law.

tended use. *Weiner,* 718 A.2d at 308. Generally, the question of whether a product is unsafe for its intended use is determined by the trial court as a matter of law. *Id.* This determination depends upon considerations of social policy, including weighing factors such as "the gravity of the danger posed by the challenged design; the likelihood that such danger would occur; the mechanical feasibility of a safer design; and the adverse consequences to the product and to the consumer that would result from a safer design." *Riley,* 455 Pa. Super. at 391, 688 A.2d at 224.

In the instant case, plaintiffs claimed the CD rod implanted in Mrs. Schindler's spine was defectively designed. The CD rod implanted in Mrs. Schindler's spine was made of 316L stainless steel. N.T., p. 3.41. The rod's surface was knurled, or grooved. The knurling provided improved holding power and was not decorative. N.T., p. 2.106. Plaintiffs claimed that the knurled surface of the rod caused the rod to prematurely break. Plaintiffs' expert opined that smooth metallic surfaces last longer than *any* metallic surfaces which have been altered. Thus, plaintiffs claimed that the knurled surface was a design defect.

An examination of the record clearly reveals that the CD rod was not unreasonably dangerous for its intended use. The intended use of the rod was to stabilize the spine until fusion occurred. If fusion is to occur in an individual, it will occur within one year of surgery. The rod was never intended to last indefinitely in the absence of fusion. N.T., pp. 3.48-3.49. The testimony at trial established that all implants will eventually fracture in the event of nonfusion. N.T., pp. 3.104-3.107.

Mrs. Schindler's surgery took place in January 1989 and fusion should have occurred by January 1990. There-

fore, the CD rod had served its intended purpose if it stabilized Mrs. Schindler's spine within the one year following her January 1989 surgery. Plaintiffs do not claim that the rod failed to align Mrs. Schindler's spine in the year following the surgery. The rod did not break until July 1993, four and a half years after the surgery and three and a half years after the point that fusion should have occurred. The CD rod fulfilled its intended use in providing stabilization for an additional three and a half years past its intended use. As such, the CD rod was not defectively designed and judgment n.o.v. must be entered in favor of defendant Stuart Medical.

Wherefore, for all the above-stated reasons, defendant, Stuart Medical's, motion for post-trial relief in the nature of a motion for judgment n.o.v. must be granted.

## ORDER

And now, February 15, 2000, upon consideration of defendant, Stuart Pharmaceutical Company's, motion for post-trial relief in the nature of a motion for judgment n.o.v., plaintiffs' response thereto, and oral arguments, it is hereby ordered and decreed that said motion is granted.

Judgment n.o.v. is hereby entered in favor of defendant, Stuart Pharmaceutical Company, and against plaintiffs, Dorothy and Robert Schindler.