J-A17011-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| MARK E. GIBBS | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| H.A. DEHART & SON, INC., GSP MARKETING, INC., FRANK BUCK MOTORS, INC., PACCAR, INC. AND PETERBILT MOTORS COMPANY | |
| Appellees | No. 828 EDA 2013 |

Appeal from the Judgment Entered March 1, 2013
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 002364 June Term, 2010

BEFORE:  GANTMAN, P.J., PANELLA, J., and STABILE, J.

MEMORANDUM BY GANTMAN, P.J.:          **FILED SEPTEMBER 17, 2014**

Appellant, Mark E. Gibbs, appeals from the judgment entered in Philadelphia County Court of Common Pleas in favor of Appellees, H.A. DeHart & Son, Inc. ("H.A. DeHart"), GSP Marketing, Inc. ("GSP"), Frank Buck Motors, Inc. ("Pocono Peterbilt"), PACCAR, Inc., and Peterbilt Motors Company ("Peterbilt Motors"), following the denial of Appellant's motion to remove a compulsory nonsuit in this personal injury action.  We affirm.

The trial court set forth the relevant facts of this case as follows:

> The underlying incident of this matter occurred on November 18, 2008[,] when Appellant sustained an injury while falling from a recycling truck that he was riding on as part of his employment with Cheltenham Township.  The truck body was manufactured by Appellee GSP…and the cab and chassis was built by Appellee Peterbilt Motors[, a

division of Appellee PACCAR, Inc.] [Appellee H.A. DeHart was the seller of the truck body and Appellee Frank Buck Motors, Inc. (t/a Pocono Peterbilt) is the regional dealer for Peterbilt Motors.] The components were assembled by GSP…and the vehicle was purchased by Cheltenham Township in 2003 and was designated as vehicle #609. [The recycling truck had a "dual-steer" configuration, but the right-side steering wheel was removed and a metal plate was placed over the right-side gas and brake pedals.] The driver of the…vehicle would be seated on the left hand side. The right hand side of the vehicle had a seat with a seat belt installed and, as the truck was designed to have the right hand door stay open, a chain was also included in the design to go across the open right hand side doorway while the vehicle was moving. Behind the cab and the front axle, a step was installed on the left side of the vehicle so that a third worker could be a part of the recycling crew.

Appellant had been employed by Cheltenham Township as a recycling worker since 1995 and had been working on…vehicle #609 since approximately the time of its purchase in 2003. Appellant testified that he never used the safety chain on the door during the entirety of his time of employment and represented that he still had no idea of its purpose as a safety feature and also admitted that a seatbelt was there for his use but that he never used it. On the day in question, at the time of the accident the vehicle was being driven by Ray Staley and a third worker, Charles Hoffner, was on the street in front of the vehicle. At the time of the accident Appellant was standing in the [cab right-side] doorway of the moving vehicle facing the driver[;] when the vehicle started to move[,] Appellant somehow slipped off and fell to the ground and was injured. There were no allegations the driver of the vehicle or anyone else took any negligent actions in operating the vehicle that day which directly caused Appellant's fall.

(Trial Court Opinion, filed January 31, 2014, at 1-2) (internal citations to the record omitted). Procedurally, Appellant filed a complaint on June 23, 2010, alleging Appellees were negligent and strictly liable for the defective design

- 2 -

of the recycling truck and for failing to warn Appellant of the danger of using the right-side doorway to the cab as a riding platform.

As the trial approached, on October 9, 2012, GSP filed a motion *in limine*, joined by H.A. DeHart, to preclude all evidence of liability against GSP as manufacturer of the truck. On that same day, GSP also filed a motion *in limine*, joined by H.A. DeHart, to preclude all evidence of liability against GSP, on the basis that the truck had no defect as a matter of law. On October 22, 2012, H.A. DeHart filed a separate motion *in limine* to preclude all evidence regarding a riding step installed by Cheltenham Township on the left/driver side of the truck behind the cab and front axle.

Jury selection took place on November 9, 2012. The court granted all motions *in limine* on November 13, 2012. Upon motion of all Appellees, the court entered a compulsory nonsuit against Appellant on the same day. Appellant filed a post-trial motion on November 21, 2012, requesting the court to reconsider its orders granting the motions *in limine*, to remove the compulsory nonsuit, and to order a new trial. The court denied Appellant's post-trial motion by order of February 21, 2013, and entered judgment against Appellant on March 1, 2013. Appellant filed a timely notice of appeal on March 5, 2013. The court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b); Appellant timely complied.

Appellant raises the following issues for our review:

WHETHER THE TRIAL COURT ERRED OR ABUSED ITS DISCRETION WHEN IT HELD AS A MATTER OF LAW THAT THE RECYCLE TRUCK CHELTENHAM TOWNSHIP HAD PURCHASED, TRUCK 609, WAS NOT DEFECTIVE.

WHETHER THE TRIAL COURT ERRED OR ABUSED ITS DISCRETION WHEN IT HELD AS A MATTER OF LAW THAT [GSP], THE ENTITY WHICH ASSEMBLED TRUCK 609, COULD NOT BE FOUND LIABLE AS A MANUFACTURER OF TRUCK 609.

WHETHER THE TRIAL COURT ERRED OR ABUSED ITS DISCRETION WHEN IT PRECLUDED THE ADMISSION OF ALL EVIDENCE REGARDING A LOOSE STEP WHICH WAS SOLD TO CHELTENHAM TOWNSHIP BY [H.A. DEHART] AND [GSP].

WHETHER THE COMPULSORY NON-SUIT ENTERED BY THE [TRIAL] COURT SHOULD BE REMOVED BECAUSE [APPELLEES] MAY BE FOUND BY A JURY TO BE STRICTLY LIABLE AND/OR NEGLIGENT.

(Appellant's Brief at 7).

In his issues combined, Appellant claims Truck 609 had a design defect because it did not have a safe place for him to stand on the right side of the truck. Appellant maintains the only place he could stand on the right side was in the open doorway to the right side of the cab in front of a wheel. Appellant argues it is dangerous and violative of American National Standards Institute ("ANSI") safety standards to place a riding step or platform in front of a truck's axle. According to Appellant, the truck's design was unreasonably dangerous because when he was riding on the right-side cab doorway, he fell off the truck and was immediately at risk of being crushed by the truck's front right wheel as the truck turned right. Appellant

- 4 -

asserts Appellees H.A. DeHart and Pocono Peterbilt knew Cheltenham Township would be using a three-man crew on Truck 609, and it was foreseeable that one of the helpers would use the right-side cab doorway as a riding platform. Appellant maintains the safety chain would not have provided any protection as he stood in the right-side cab doorway. He likewise claims it was unreasonable to expect him to sit down or use a seatbelt during trash collection because this practice was "not the way trash was collected in Cheltenham [or] many other places," and helpers must step on and off the truck frequently. (Appellant's Brief at 19). Appellant contends all Appellees had a responsibility to provide either a safe place for Appellant to stand on the truck while working or appropriate warnings regarding the allegedly "nonobvious" risk of riding in the right-side cab door opening, *i.e.*, to warn of the danger of being run over by the truck wheels. Appellant specifically argues GSP should be held strictly liable or negligent for the defective design of the truck, even though GSP manufactured only the truck body, and not the cab, where GSP assembled the final product. With respect to the sale and installation of a riding step between the front and rear axles on the left side of Truck 609, Appellant argues this evidence was relevant because it demonstrated H.A. DeHart and GSP assisted in the unsafe design of Truck 609 and should have anticipated that a helper on the right side would similarly use the cab doorway as a riding step. Appellant submits the trial court erred by granting various motions *in limine* precluding

evidence of Appellees' liability and subsequently entering a compulsory nonsuit. Appellant concludes the court erred in refusing to remove the compulsory nonsuit and award him a new trial. We disagree.

"[A] court's decision to grant or deny a motion *in limine* is subject to an evidentiary abuse of discretion standard of review." ***Commonwealth v. Reese***, 31 A.3d 708, 715 (Pa.Super. 2011) (*en banc*).

> Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason.

***Miller v. Sacred Heart Hosp.***, 753 A.2d 829, 832 (Pa.Super. 2000) (internal citations omitted).

"This Court will reverse an order denying a motion to remove a nonsuit only if the trial court abused its discretion or made an error of law." ***Brinich v. Jencka***, 757 A.2d 388, 402 (Pa.Super. 2000), *appeal denied*, 565 Pa. 634, 771 A.2d 1276 (2001).

> A motion for compulsory non-suit allows a defendant to test the sufficiency of a plaintiffs' evidence and may be entered only in cases where it is clear that the plaintiff has not established a cause of action; in making this determination, the plaintiff must be given the benefit of all reasonable inferences arising from the evidence. When so viewed, a non-suit is properly entered if the plaintiff has not introduced sufficient evidence to establish the necessary elements to maintain a cause of action; it is the duty of the trial court to make this determination prior to the submission of the case to the jury. When this Court reviews the grant of a non-suit, we must resolve all conflicts in the evidence in favor of the party against whom

the non-suit was entered.

*Kelly v. St. Mary Hosp.*, 778 A.2d 1224, 1226 (Pa.Super. 2001) (citation

omitted).

> Pennsylvania law characterizes products liability claims as follows:
>
> > The Restatement (Second) of Torts § 402A,[3] adopted as the law of this Commonwealth…, governs all claims of products liability and allows recovery where a product in "a defective condition unreasonably dangerous to the consumer or user" causes harm to the plaintiff. Restatement (Second) of Torts, § 402A(1). Success on such a claim requires the plaintiff to prove that (1) the product was defective, and (2) the defect was the proximate cause of the harm. There are three types of defective conditions which may give rise to strict liability: manufacturing defect, design defect, and failure to warn defect.…
> >
> > > [3] Section 402A provides:
> > >
> > > > (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property if
> > > >
> > > > > (a) the seller is engaged in the business of selling such a product, and
> > > > >
> > > > > (b) it is expected to and does reach the user or consumer without a substantial change in the condition in which it is sold.
> > > >
> > > > (2) The rule stated in Subsection (1) applies although
> > > >
> > > > > (a) the seller has exercised all possible care in the preparation and sale of his product, and

> (b) the user or consumer had not bought the product from or entered into any contractual relation with the seller.
>
> Restatement (Second) of Torts, § 402A (1965).
>
> The threshold inquiry in all products liability cases is whether there is a defect which rendered the product unreasonably dangerous. A product is defective when it is not safe for its intended use, *i.e.*, the product left the supplier's control lacking any element necessary to make it safe for its intended use. Court control of jury action is more extensive in products liability cases than in the ordinary negligence action…. [O]ur Supreme Court held that the question of whether a product is "unreasonably dangerous" is a question of law to be decided by the trial court, the resolution of which depends upon considerations of social policy, including weighing factors such as the gravity of the danger posed by the challenged design; the likelihood that such danger would occur; the mechanical feasibility of a safer design; and the adverse consequences to the product and to the consumer that would result from a safer design.

*French v. Commonwealth Associates, Inc.*, 980 A.2d 623, 632 (Pa.Super. 2009) (quoting *Weiner v. American Honda Motor Co., Inc.*, 718 A.2d 305, 307-08 (Pa.Super. 1998)) (some internal citations omitted). "[T]rial courts and this Court have the power to reject design defect claims as a matter of law, even where the plaintiff presents evidence tending to show that the product is defective." *Schindler v. Sofamor, Inc.*, 774 A.2d 765, 773 (Pa.Super. 2001), *appeal denied*, 567 Pa. 727, 786 A.2d 989 (2001).

"[T]o succeed on a claim of inadequate or lack of warning, a plaintiff

must prove that the lack of warning rendered the product unreasonably dangerous and that it was the proximate cause of the injury." ***French, supra*** at 632 (quoting ***Weiner, supra*** at 309).

> [I]t must be demonstrated that the user of the product would have avoided the risk had he…been warned of it by the seller/manufacturer. The determination of whether a warning is adequate and whether a product is "defective" due to inadequate warnings is a question of law to be decided by the trial court judge who must determine, under an ***Azzarello*** [***v. Black Bros. Co., Inc.***, 480 Pa. 547, 391 A.2d 1020 (1978),] social policy analysis, whether the imposition of strict liability would be justified under the facts of the case.

***Id.*** at 632-33 (citation omitted).

> The duty to warn, however, does not require a manufacturer to educate and instruct a novice in the principles of the product's operation. It also does **not require that a manufacturer warn of obvious dangers which are generally known and recognized**. A warning of inherent dangers is sufficient if it adequately notifies the intended user of the unobvious dangers inherent in the product.

***Fletcher v. Raymond Corp.***, 623 A.2d 845, 848 (Pa.Super. 1993) (internal citations and quotation marks omitted) (emphasis added). ***See also Viguers v. Philip Morris USA, Inc.***, 837 A.2d 534 (Pa.Super. 2003), *affirmed*, 584 Pa. 120, 881 A.2d 1262 (2005) (stating there is no duty to warn potential users of that which is known to most people).

> Unlike professional liability claims, "strict liability affords no latitude for the utilization of foreseeability concepts." Moreover, our Supreme Court has stated:
>
> > [N]egligence concepts have no place in a case based on strict liability. Indeed, Section 402A of the

- 9 -

> Restatement (Second) of Torts makes it clear that the imposition of strict liability for a product defect is not affected by the fact that the manufacturer or other supplier has exercised all possible care. This approach is militated by the fact that our strict liability law places the product itself…on trial, and not the manufacturer's conduct.

*French, supra* at 633 (quoting *Phillips v. Cricket Lighters*, 576 Pa. 644, 650, 841 A.2d 1000, 1003 (2003)).

To prevail in a negligence action, a plaintiff must establish the defendant "owed a duty of care to the plaintiff, that duty was breached, the breach resulted in the plaintiff's injury, and the plaintiff suffered an actual loss or damages." *Merlini ex rel. Merlini v. Gallitzin Water Authority*, 602 Pa. 346, 354, 980 A.2d 502, 506 (2009).

> The determination of whether a duty exists in a particular case involves the weighing of several discrete factors which include: (1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution.

*Althaus ex rel. Althaus v. Cohen*, 562 Pa. 547, 553, 756 A.2d 1166, 1169 (2000). Pennsylvania has adopted the Restatement (Second) of Torts § 388 in cases involving a claim of negligent failure to warn. *Dauphin Deposit Bank & Trust Co. v. Toyota Motor Corp.*, 596 A.2d 845, 850 (Pa.Super. 1991). Section 388 provides as follows:

> **§ 388  Chattel Known to be Dangerous for Intended Use**

One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

(a)  knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b)  has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

(c)  fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

Restatement (Second) of Torts § 388.

Instantly, the trial court reasoned as follows:

Appellant's argument[] that an outside step should have been provided and that its absence was a defect was…unconvincing.  A step was included on the left outside behind the axle because the driver of the vehicle was seated in the left hand of the cab.  A similar one was not included on the right side because a seat, with a seat belt, and a chain to go across the door was included.  There was no reason for a step to be included since there was space for the worker inside the cab on the right side, while there was no space for the third worker on the left side.  Appellant's failure to properly avail himself of the seat and safety features would not have been rectified by the existence of an outside step behind the [right wheel] axle.  It is a completely different issue, and in no way related to the open and obvious danger of the actions engaged in by…Appellant, which actually led to the injury.

(Trial Court Opinion at 4-5).  We agree.  The evidence of record showed the

right-side interior of the truck cab contained space for a worker to stand or

- 11 -

sit, and the safety features included a seat belt, a chain that could be pulled across the open doorway, or a door that could be closed. Appellant provided no evidence that his proposed solution (installation of an exterior riding step at the right rear of the truck) would have been a safer option than riding inside the cab. When Appellant fell off the truck, he was standing in the open doorway, not within the confines of the cab. None of Appellees placed a riding step in this location, and no evidence of record indicated the place where Appellant stood was intended to function as a riding step. The possibility that Appellant might nevertheless choose to stand in the open doorway did not make the truck unreasonably dangerous as designed. Moreover, installation of a riding step on the right rear of the vehicle would not have eliminated the possibility that Appellant would still stand in the open doorway. Truck 609 had a safer alternative for Appellant. He could have climbed into the cab, sat in the seat, and used the seatbelt and chain. That it might have been easier for Appellant to get on and off the truck by standing in the open cab doorway does not control. Appellant failed to prove a genuine design defect because he was unable to show Truck 609 lacked any element necessary to make it safe for its intended use. *See French, supra*. Likewise, Appellant failed to show that any of Appellees breached a duty to provide a safe product. Regardless of whether a worker such as Appellant might stand in the right cab door opening, the truck had an interior space equipped with safety features which Appellant declined to use.

Thus, Appellees cannot be held liable for the negligent manufacture, assembly, or sale of a defective product. ***See Merlini ex rel. Merlini, supra.***

With respect to Appellant's failure to warn claim, the trial court reasoned as follows:

> The dangerous condition was not that if a person hanging onto the moving vehicle fell while a right turn was being made they might be hit, the dangerous condition was that a person hanging on to the moving vehicle could fall. Whether struck by the wheel, striking another vehicle, or striking the ground, all sources of potential injury stem from the completely open and obvious danger that if a person is hanging onto the outside of a moving vehicle or hanging in the doorway of a moving vehicle with no door that there is the possibility of falling and being injured.
>
> Merely because…Appellant was injured in one of the less likely of the myriad of possible ways that a person could be injured when falling from a moving vehicle does not make that specific injury suffered by…Appellant a defect of the vehicle when the underlying act itself that led to the injury was completely and utterly obvious as potentially dangerous. [A] warning is necessary only for non-obvious dangers. In addition to…Appellant's multiple years [of] experience with the specific vehicle he was in, any reasonable person confronted with the question of whether hanging onto a moving vehicle would pose…a clear and obvious risk of danger would indubitably answer in the affirmative. A warning therefore was unnecessary….

(Trial Court Opinion at 3-4). We accept the court's analysis. The risk of falling off the truck while standing in the right cab door opening was obvious. It was apparent that Appellant could fall off and sustain injuries from the impact with the ground, another vehicle, or the wheels of the truck, if he rode in this area of the cab. Thus, whether analyzed under a strict

- 13 -

liability or negligence theory, Appellees had no duty to warn of this open and clear danger. *See French, supra*; *Fletcher, supra*; *Dauphin Deposit Bank & Trust Co., supra*.

Based on the foregoing, the court properly granted GSP's motion *in limine* to preclude all evidence of liability because the truck had no design defect as a matter of law. The court also properly granted H.A. DeHart's motion *in limine* to preclude evidence regarding a riding step installed on the left side of the truck, which was used by a third worker, because that evidence was irrelevant to Appellant's injury. As a result of the court's rulings on the motions *in limine*, Appellant could not establish the elements necessary to maintain his action in strict liability or negligence on the grounds asserted. Thus, the court's subsequent entry of a compulsory nonsuit was proper. *See Kelly, supra*. Due to our disposition, we need not address whether GSP could be considered a manufacturer or assembler of the truck for purposes of Appellant's strict liability claims. Accordingly, we affirm.

Judgment affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/17/2014